SWEETLAND *v.* CHICAGO & GRAND TRUNK RAILWAY CO.

1. EVIDENCE—ACCIDENTAL KILLING—PAIN AND SUFFERING.
   To establish the fact that pain and suffering were endured by decedent in consequence of an accident which caused his death, it must be affirmatively shown that death was not instantaneous, and that decedent was conscious after the accident.

2. SAME—SUFFICIENCY—MATTERS OF CONJECTURE.
   A car in which decedent was riding was "telescoped" in a collision, and many of the passengers were instantly killed. A witness, who reached the car three or four minutes after the accident, found some of the occupants alive, but the car almost immediately took fire, and the rescuing party was driven away. When decedent's body was found, the legs and arms were burned completely off, the left thigh was either burned off diagonally or fractured, and the upper part of the scalp was entirely denuded. It was the opinion of a physician that death was caused, not by the collision, but by burning. *Held*, that there was no tangible evidence from which the jury had the right to infer that decedent endured pain and suffering. MONTGOMERY and HOOKER, JJ., dissenting.

3. REMEDIES—NEGLIGENT INJURIES RESULTING IN DEATH—STATUTES.
   Upon the question whether, in the case of a negligent injury

117    329
128    448
128    449
e128   451
e128   452
e128   454
e128   455
e128   458

117    329
s75ᴺᵂ1066
132    ⁵284

117    329
134    ¹368

117    329
156    ⁸701

117    329
157    ³685

resulting, but not instantaneously, in death, a right of action under 3 How. Stat. § 7397, providing for the survival of actions for "negligent injuries to the person," for the pain and suffering endured by decedent, would survive for the benefit of the estate, and, at the same time, an action be maintainable under 2 How. Stat. §§ 8313, 8314, for the pecuniary loss occasioned to the heirs by reason of the death,[1] the court divided:

LONG, J. (GRANT, C. J., concurring), holding that the remedy under the death act is exclusive, applying in all cases where death results from a wrongful act; the survival act applying only, and wherever, death results from other causes.

HOOKER, J., agreeing with LONG, J., and GRANT, C. J., that the statutes do not give two rights of action for the same injury resulting in death, but favoring a construction limiting the operation of the death act to cases where death is instantaneous, and allowing the survival act to apply whenever a right of action accrued to the person injured.

MONTGOMERY, J., being of the opinion that the statutes contemplate two separate and distinct remedies, both of which may, under proper circumstances, be enforced.

MOORE, J., expressing no opinion.

Error to Cass; Coolidge, J. Submitted October 7, 1897. Decided June 28, 1898.

Case by John B. Sweetland, administrator of the estate of Evaline A. Aldrich, deceased, against the Chicago & Grand Trunk Railway Company, for negligently causing the death of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Reversed.

Geer & Williams (E. W. Meddaugh, of counsel), for appellant.

Marshall Howell and Edward Bacon, for appellee.

GRANT, C. J. We do not think that there was any tan-

---

[1] The conflicting authorities on the question how many distinct causes of action arise from injuries resulting in death are collated in a note to Louisville & Nashville Railroad Co. v. McElwain, (Ky.) 34 L. R. A. 788.

gible evidence from which the jury had the right to infer that the deceased endured pain and suffering. The two trains collided with terrific force, and many were instantly killed. The witness Allen testified that he reached the telescoped car within three or four minutes after the collision; that he heard wails and groans within; that the car took fire within a minute or two afterwards; that within 10 or 15 minutes they were driven away by the heat of the flames. Plaintiff was a physician, and brother of the deceased. He testified that both the upper and lower extremities of the body were burned completely off, that the upper part of the scalp was entirely denuded, and that the left thigh bone was either burned off diagonally or had been fractured. From his examination of the body, he gave his opinion that death was not instantaneous. It is mere conjecture how long she lived, and there is nothing to indicate that she was conscious at any time after the accident, and before death, if death was not instantaneous. If she was not conscious, how can it be said that she suffered pain? Whether death was instantaneous, or whether, if not instantaneous, she was conscious after the injury, is purely conjectural.

Where one was found, about 10 minutes after the accident, with his body crushed, and his bowels disrupted, and he was still breathing, but unconscious, and died almost immediately, without recovering consciousness, held that no damages could be recovered for pain and suffering. *Mulchahey* v. *Wheel Co.*, 145 Mass. 281 (1 Am. St. Rep. 458). The court said:

"But, as the plaintiff can only recover such damages as she can show were sustained by her intestate, if he became instantly insensible, and so remained until his death, nothing can be recovered for any physical or mental suffering sustained by him."

Where a boat struck the bank of a river, and sank in about 10 minutes, and a passenger was drowned, held that there could be no recovery for mental and physical pains and shock before death; that they were substantially con-

temporaneous with her death, and inseparable, as a matter of law, from it. *The Corsair*, 145 U. S. 335. In *Cheatham* v. *Red River Line*, 56 Fed. 248, damages were claimed for suffering while the deceased was struggling in the water before drowning. *Held*, there could be no recovery. Where one was struggling in the water 10 minutes after being thrown in by the wrongful act of the defendant, held that death was instantaneous. *Sherman* v. *Stage Co.*, 24 Iowa, 515. See, also, *Kennedy* v. *Standard Sugar Refinery*, 125 Mass. 90 (28 Am. Rep. 214); *Tully* v. *Railroad Co.*, 134 Mass. 499.

The rule deducible from the above authorities, and we think also from sound reason, is that plaintiff must show that there was conscious suffering in order to sustain his suit for damages. It is not sufficient to show that the deceased might have lived a few moments after the accident. We are therefore of the opinion that the verdict based upon this count in the declaration cannot be sustained.

Judgment reversed as to this count, and no new trial ordered.

Moore and Long, JJ., concurred with Grant, C. J.

Long, J. This suit is brought to recover damages for personal injuries caused to the plaintiff's intestate by the collision of defendant's trains through the negligence of defendant; also to recover damages for her death resulting from such collision, and also for loss of personal property. The first count of the declaration is upon the common-law liability for pain and suffering, etc., endured by the deceased prior to death, which, it is claimed, was not instantaneous, and the right of action for which, it is insisted, survives by section 7397, 3 How. Stat., and is for the benefit of her estate. Under this count plaintiff had verdict and judgment for $1,000. The second count is for loss of personal property, for which plaintiff had verdict and judgment for $110. The third count is for the benefit of William W. Sweetland, a brother of deceased, who,

it is claimed, was dependent upon her for support, and in whose interest the administrator claims the right to recover under sections 8313, 8314, 2 How. Stat. Under this count the jury found in favor of defendant. Defendant brings error.

The provisions of section 7397, 3 How. Stat., have been in force since 1838. In 1846 it read:

"In addition to the actions which survive by the common law, the following shall also survive; that is to say: Actions of replevin and trover, actions for assault and battery, or false imprisonment, or for goods taken and carried away, and actions for damage done to real or personal estate."

This statute was amended by Act No. 113, Pub. Acts 1885, by inserting into the original act the clause, "for negligent injuries to the person."

Sections 8313 and 8314, 2 How. Stat., are substantially a re-enactment of Lord Campbell's act, omitting the preamble and third section, which was first incorporated into our statutes in 1848, and was amended in 1873. As amended, it reads as follows:

"SECTION 1. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action, and recover damages, in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"SEC. 2. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and the amount recovered in every such action shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death to those persons who may be entitled to such damages when recovered."

It will be noticed that until 1885 there was no statute in this State providing for the survival of actions for negligent injuries to the person, and no suit could be maintained after the death of the injured person for the pain and suffering arising from such injuries. Was it the intention of the legislature under section 7397 to give a right of action for the benefit of the estate in case of death from an injury, and also to allow the heirs to recover under sections 8313 and 8314 for their pecuniary loss? I think not. The fact that the common-law right of action which survives under section 7397 is for the benefit of the decedent's estate, and that the right of action under sections 8313 and 8314 is given for the benefit of the decedent's heirs, can make no difference in the construction which I think should be placed upon these statutes. It was not the intention of the legislature to give two rights of recovery for the same injury which results in death. The act giving a right of action for damages for wrongfully causing death was passed by our legislature several years after the act providing for survival of actions, and was intended to provide the only remedy where death resulted from any wrongful act.

If Mrs. Aldrich, the decedent, had lived long enough to bring suit against defendant for injuries, etc., and pain and suffering, both past and future, and the jury had awarded her damages, which had been paid, and then she had died from the same injuries so wrongfully inflicted, would it be held that the administrator might maintain another action under sections 8313 and 8314? Or, had she survived her injuries long enough to have settled with the defendant, and had so settled, would it be held that the administrator could maintain an action under these sections? It is generally held that if the deceased had settled for injuries received in his lifetime, or recovered damages in an action, an action cannot be maintained, under Lord Campbell's act, after his death. Cooley, Torts, 264. It must follow, therefore, that if such judgment obtained by him in his lifetime or settlement so made by

him is a bar to a recovery by the heirs under sections 8313 and 8314, then a judgment obtained by the heirs for a cause of action accruing to them by survival under section 7397 would be a bar to the right to recover for his death under sections 8313 and 8314. In other words, it is apparent that it has not been the understanding of the courts and law-writers that such statutes intended to create two rights of action for the same wrongful act. It is true that repeals by implication are not favored in the law. There is, however, no such repugnance in these statutes that both cannot stand. Section 7397, which provides for the survival of common-law actions for negligent injuries to the person, applies to cases where death results from other causes than the wrongful injury. It seems to me that this is made plain from the terms of the statutes.

In *Rogers* v. *Windoes*, 48 Mich. 628, the action was brought for the wrongful conversion of testator's property during his lifetime. The court below held that the action died with the person, and no action survived. It was held that the action did survive, and the judgment below was reversed. That case in no way conflicts with the interpretation which we give to these statutes. It is true that some language was used in *Hurst* v. *Detroit City Railway*, 84 Mich. 544, which might be taken as holding that satisfaction under one of these statutes would be no bar to a suit under the other; but that question was not involved in that case, and the language was mere *dictum*.

The Illinois act passed in 1853 is almost identical with our sections 8313, 8314. The survival act of that State includes within the actions which survive, actions to recover damages for injury to the person. This last act was passed in 1872. In *Holton* v. *Daly*, 106 Ill. 131, one Michael Daly was injured, and brought suit, and recovered judgment, which was afterwards set aside. Subsequent to this he died intestate, and Mary Daly was appointed administratrix. She was substituted as party plaintiff in the cause, which was again tried, and resulted

in favor of plaintiff. The supreme court, in construing the two acts, held that the death act applied, and that no recovery could be had under the survival act. The court said:

"The act of February 12, 1853, applies, as we have seen, by its own terms, to all cases where 'the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof.' As was said in *City of Chicago* v. *Major*, 18 Ill. 356 (68 Am. Dec. 553), 'The language is very broad and comprehensive, embracing in direct and positive terms all cases where, if death had not ensued, the injured party could have maintained an action for the injury;' and, as we have already observed, it is the wrongful act, neglect, or default that constitutes the cause of action. A right of action, which at common law would have terminated at the death, is continued for the benefit of the wife, husband, etc., and its scope enlarged to embrace the injury resulting from the death. There were left, however, injuries to the person not resulting in death, for which, in the event of the death of the injured party before obtaining judgment, no remedy was provided, affording a proper subject-matter for the act of 1872. If a party receiving injuries died from other causes, no action could be maintained under the act of February 12, 1853; but now, under the statute of 1872, the cause of action survives to his personal representatives. It is not to be presumed it was intended there should be two causes of action in distinct and different rights by the same party plaintiff for the same wrongful act, neglect, or default. * * * It is true, the measure of recovery in the different cases is not the same, but the cause of action is, viz., the ·wrongful act, neglect, or default. We feel, therefore, constrained to hold that the act of 1872 was not intended to apply to cases embraced by the act of February 12, 1853."

In *Chicago, etc., R. Co.* v. *O'Connor*, 119 Ill. 586, it appeared that Jeremiah O'Connor, in his lifetime, brought suit against the railroad company for damages for personal injuries, and obtained judgment. An appeal was taken, and pending the appeal O'Connor died from causes other than the injuries complained of in the declaration. His

son was substituted as plaintiff in the suit. It was said by
the court:

"The action being for personal injuries caused by the
negligence of the defendant, it is within the statute, and
survives. There is nothing in *Holton* v. *Daly*, 106 Ill.
131, which holds to the contrary. Indeed, it is expressly
therein recognized that such actions do survive upon the
death of the plaintiff; and it was held, when the death is
the result of the injuries for which the suit is brought, the
action must be prosecuted, after the death, for the benefit
of the widow and the next of kin, and that in such case
there can be no recovery for the bodily pain and suffering,
but that, when the death results from a cause other than
the injuries for which the suit is brought, there may be a
recovery, notwithstanding the death, for precisely the
same injuries that the party himself could have recovered
for, had he lived until after the final trial."

The statutes of Kansas are similar to our own. Sec-
tion 420 of the compilation of 1879 is the survival act, and
provides for the survival of actions to recover damages
for an injury to the person. Section 422 of the same is
the death act. In *McCarthy* v. *Railroad Co.*, 18 Kan.
46 (26 Am. Rep. 742), these two sections were construed,
and it was held that they must be construed *in pari
materia*. The court said:

"The purpose of section 422 is, evidently, not only to
fix the amount of damages, and limit them to the use of
the widow and children, or next of kin, but to take away
the right of the administrator to sue for the benefit of the
estate generally, where death resulted from the injuries.
Section 420, as construed with section 422, only causes
the action to survive for injury to the person when the
death does not result from such injury, but does oc-
cur from other circumstances. The right of action under
section 422 is exclusive, and an administrator could not
maintain an action under sections 420 and 422 for the
same injury. When death results from wrongful acts,
section 422 is intended solely to apply,"—citing *Read* v.
*Railway Co.*, L. R. 3 Q. B. 555; *Andrews* v. *Railroad
Co.*, 34 Conn. 57.

117 MICH.—22.

In *Hulbert* v. *City of Topeka*, 34 Fed. 510, where the action was brought by the administrator for injuries to the decedent in her lifetime, from which she died, Mr. Justice Brewer, before whom the cause was tried, held that no recovery could be had under section 420, and that, in cases of death from negligent injuries, section 422 applied. Justice Brewer was on the bench of the State court when the *McCarthy Case* was decided, and joined in that opinion; but in the case in the federal court he expressed some doubt about the correctness of the ruling in that case, though he followed it. This doubt seems to have been based upon the rule laid down in *Needham* v. *Railway Co.*, 38 Vt. 294, where it was held that, where death occurs in consequence of a bodily injury, two causes of suit or action may arise,—one in favor of the decedent for his loss and suffering resulting from the injury in his lifetime, and revived by an act of 1847; the other founded on his death, or on the damages resulting from his death to his widow and next of kin, under an act of 1849. But, however much Mr. Justice Brewer may have been shaken as to the correctness of his conclusions in the *McCarthy Case* by the *Needham Case*, it seems that the supreme court of Vermont, in a later case (*Legg* v. *Britton*, 64 Vt. 652, decided in 1890), was not satisfied with the conclusions reached in the *Needham Case* in 1865. From that case it appears that as early as 1881 Judge Veazey of the Vermont court wrote an opinion, which met the approval of a majority of the court, in effect overruling some of the conclusions reached in the *Needham Case*. This opinion was not filed, as the case went off on other questions. In *Legg* v. *Britton*, *supra*, it was held that the act providing for the recovery of damages for the benefit of the widow and next of kin, where death results from the neglect or default of another, does not create a new and additional cause of action; thus fully overruling the *Needham Case*.

In *Louisville, etc., R. Co.* v. *McElwain*, 98 Ky. 706 (56 Am. St. Rep. 385), the court, speaking of the two statutes, says:

" We cannot believe that the general assembly intended. that the personal representative should maintain an action for the death of the wife, practically for the husband's benefit, and allow at the same time the husband to maintain one, on his own account, for the same acts or negligence."

In *Lubrano* v. *Atlantic Mills*, 19 R. I. 129 ( decided in 1895), the question was whether, under the statutes of that State, an administrator had the right to maintain two actions for negligence resulting in death,— one for the benefit of the widow and next of kin, according to Lord Campbell's act; and another for the damage to the person, under the statute for the survival of actions.   The action was brought for the pain and expense arising from injuries to the plaintiff's intestate before his death, which resulted therefrom.   The defendant pleaded a judgment in its favor in a suit by the plaintiff in the same cause of action.. The plaintiff replied that the former action was brought by him as trustee for the next of kin of the deceased, and in a different right from that involved in the present action, which was for the benefit of the estate.   To this replication defendant demurred, and the demurrer was sustained.   In substance, these statutes are like our own.   The opinion of the court in that case is so well reasoned, and the cases which seem to differ from the correct principle so well explained, that I quote from it at some length.   In speaking of the survival statute, the court said :

"It is under this section that the plaintiff claims.   In support of his claim he relies on *Bradshaw* v. *Railway Co.*, L. R. 10 C. P. 189; *Leggott* v. *Railway Co.*, L. R. 1 Q. B. Div. 599; *Barnett* v. *Lucas*, 6 Ir. C. L. 247; *Bowes* v. *City of Boston*, 155 Mass. 344; and *Needham* v. *Railway Co.*, 38 Vt. 294.

"The opinion in *Bowes* v. *City of Boston* is based upon the statutes of Massachusetts, and holds that two actions, one for the benefit of the family and one for the benefit of the estate, may proceed at the same time, on independent grounds, and for different purposes.   It cites no authority. In *Needham* v. *Railway Co.* the point decided was that, the injury to the deceased having occurred in New Hamp-

shire, where no right of action in either form survived,. the plaintiff could not maintain action therefor in Vermont. The *dictum* relating to two causes of action has been recently overruled in *Legg* v. *Britton*, 64 Vt. 652. *Barnett* v. *Lucas* was an action for injury to personal estate, and is, therefore, not in point. *Bradshaw* v. *Railway Co.* was on demurrer to the declaration, which alleged a breach of contract to carry a passenger safely, and it was held that the action could be maintained, notwithstanding the fact that provision for compensation for the death was made by Lord Campbell's act. The case was decided in 1875; and *Leggott* v. *Railway Co.*, decided in 1876, was a case upon a similar contract, to which the defendant pleaded a denial of the averments of fact, and a recovery by the plaintiff under Lord Campbell's act. The plaintiff replied that the defendant was estopped by the judgment in the former case to deny the facts, and to this replication the defendant demurred. The court held that there was no estoppel, because the plaintiff sued in a different right; and, in so deciding, followed *Bradshaw* v. *Railway Co.*, but not without protestation. Mellor, J., said: 'With the single exception, so far as I am aware, of the case in the common pleas (*Bradshaw* v. *Railway Co.*), there appears to be no authority that an action will lie by the executor in respect of what is claimed in this action; but, as that case has been decided on the very point, I entirely yield to the authority of the decision so far as to say that in this court it cannot be questioned, and we must, therefore, abide by it.' In *Pulling* v. *Railway Co.*, L. R. 9 Q. B. Div. 110, the *Bradshaw Case* was further commented upon. Denman, J., said: 'None of the authorities go so far as to say that, where the cause of action is in substance an injury to the person, the personal representative can maintain an action merely because the person so injured incurred in his lifetime some expenditure of money in consequence of the personal injury. The case of *Bradshaw* v. *Railway Co.* certainly does not go to that length, because the judgments in that case are expressly based upon the distinction, in this respect, between actions of contract and actions of tort, and upon the fact that in that case the action was an action of contract.' The opinion (Pollock, B., concurring) decided that the plaintiff could not sue for damage to the intestate's person. In view of these comments, the support which the *Bradshaw Case* gives to the plaintiff turns out to be more apparent than real.

"Prior to these cases, that of *Read* v. *Railway Co.*, L. R. 3 Q. B. 555, had been decided in 1868, holding that satisfaction received by the deceased in his lifetime for the injury was a bar to a suit for the death. That case stated the principle upon which the compensatory act is founded. It creates no new cause of action by reason of the death, but gives a new right of recovery in substitution for the right of action which the deceased would have had if he had survived. Upon this principle the new remedy must be exclusive, since otherwise there would be two recoveries for the same cause of action, namely, the negligence of the defendant, which is the cause of action on which the deceased would have sued at common law if he had survived. Moreover, the recognized rules of construction lead to the conclusion that the remedy for the death is exclusive. While the act relates to a remedy, it is, nevertheless, in derogation of the common law, because it gives a right of action where none existed at common law; and so it should be strictly construed. The provisions for survival of actions for damages to the person and for the remedy for the death have been embodied in the same statute in this State since 1857, although the latter was first adopted. The general provision should not be construed to modify the special, since the intention to modify the former statute by giving an additional remedy is not plain, and both can stand together; the act for survival embracing damages to the person other than those which result in death. This is the construction which was given to precisely similar provisions in *Holton* v. *Daly*, 106 Ill. 131, where it was held that the only cause of action was the wrong done, irrespective of consequences, and that a statute of survival subsequently passed did not give a remedy additional to that of the prior act relating to the death. * * * So in *Chicago, etc., R. Co.* v. *O'Connor*, 119 Ill. 586, it was held that where the plaintiff, pending an action for injuries, dies from some other cause than the injury, the action survives, and may be prosecuted by his administrator. In *McCarthy* v. *Railroad Co.*, 18 Kan. 46 (26 Am. Rep. 742), where both provisions, for action for death and for survival of an action for injury to the person, had been embodied in a revision, as in our own statutes, it was held that they must be construed *in pari materia*, and that the latter provision applied only to cases where the death did not result from the injury. This decision was followed in *Hulbert* v. *City of Topeka*, 34 Fed. 510."

In *Griffiths* v. *Earl of Dudley*, L. R. 9 Q. B. Div. 357, Field, J., said:

"*Read* v. *Railway Co.*, L. R. 3 Q. B. 555, is a clear decision that Lord Campbell's act did not give any new cause of action, but only substituted the right of the representative to sue in the place of the right which the deceased himself would have had if he had survived."

· In *Canadian Pacific R. Co.* v. *Robinson*, 19 Can. Sup. Ct. 292, Taschereau, J., quotes with approval the language of Field, J., in *Griffiths* v. *Earl of Dudley*, *supra*.

In *Wood* v. *Gray*, [1892] 17 App. Cas. 576, it appears that a workman, having been injured through the fault, as he alleged, of his employers, brought an action against them for damages. While the action was pending, he died, intestate and unmarried. His mother was appointed his executrix, and she raised a second and concurrent action for *solatium* for her son's death, and asked that the second action should be remitted to the same jury who were to try the first. It was held, affirming the court of sessions, that the second action was incompetent. Lord Watson, who delivered the opinion of the House of Lords, among other things, said:

"There is not a single instance in which the court has allowed two actions to be brought in respect of the same negligent act leading to the injury and death of one person. Even in cases where the right of relatives to sue has been recognized, they must bring one suit, and one only, in which the damages due to them respectively may be assessed. In that state of the law, I do not think this House ought to encourage the creation of a new right and corresponding liability which are at present unknown in Scotland."

Lord Field, concurring in that opinion, said:

"The appellant did cite to your lordships a great many cases. I have been carefully through them, and have considered them, and it seems to me, as far as I can follow the question, that there is no foundation whatever for the appellant's contention."

That two actions cannot be maintained for the same wrongful act, see *Bigelow* v. *Nickerson,* 17 C. C. A. 1, 70 Fed. 113; *The City of Norwalk,* 55 Fed. 98; *Steamboat Co.* v. *Chase,* 16 Wall. 532; *Dibble* v. *Railroad Co.,* 25 Barb. 188; *Proctor* v. *Railroad Co.,* 64 Mo. 119; *Fowlkes* v. *Railroad Co.,* 5 Baxt. 663.

In a late case in Kansas, decided July 10, 1897,—*Martin* v. *Railway Co.,* 58 Kan. 475,—it was held that section 420, the survival statute, permits actions to survive for injury to the person only when death does not result from the injury, but occurs from other causes; but, however, where death results from the wrongful act or omission of another, section 422, the death act, is exclusive. That court cites in support of that rule of construction: *Andrews* v. *Railroad Co.,* 34 Conn. 57; *Read* v. *Railway Co.,* L. R. 3 Q. B. 555; *Chicago, etc., R. Co.* v. *O'Connor,* 19 Ill. App. 591; *Holton* v. *Daly,* 106 Ill. 131; *Chicago, etc., R. Co.* v. *O'Connor,* 119 Ill. 586; Tiff. Death Wrongf. Act, § 119.

In *Hill* v. *Railroad Co.,* 178 Pa. St. 223 (56 Am. St. Rep. 754), decided by the supreme court of Pennsylvania November 9, 1896, it appeared that an act of 1851 of that State provides that no action for personal injuries by negligence or default shall abate by reason of plaintiff's death, but shall survive to his personal representatives, and that, where the injured person did not sue during his life, his widow or personal representative may sue; that an act of 1855 extends the right of action to children and parents of a decedent, and provides for the distribution of damages recovered. It was held that a widow was not given an independent cause of action for an injury causing her husband's death which he could not in his lifetime release or compound. In that case the court cites *Read* v. *Railway Co.,* L. R. 3 Q. B. 555, and the opinion of Lush, J., with approval, in which he said:

"The intention of the statute is, not to make the wrongdoer pay damages twice for the same wrongful act, but to enable the representatives of the person injured to re-

cover in a case where the maxim '*Actio personalis moritur cum persona*' would have applied. It only points to a case where the party injured has not recovered compensation against the wrongdoer."

I am aware that in some of the States it is held by the courts that two actions may be maintained under statutes somewhat similar to our own; but the case of *Needham* v. *Railway Co.*, 38 Vt. 294, we have seen, has been effectually overruled by the later case of *Legg* v. *Britton*, 64 Vt. 652, and the case of *Bowes* v. *City of Boston*, 155 Mass. 344 (15 L. R. A. 365), shown not to be well reasoned, by the Rhode Island court, in *Lubrano* v. *Atlantic Mills*, 19 R. I. 129. In *Vicksburg, etc., R. Co.* v. *Phillips*, 64 Miss. 693, it is held that two actions may be maintained under somewhat similar statutes to our own; but the court cites no cases sustaining such a rule, though counsel for plaintiff in that case in their brief seem to rely upon *Needham* v. *Railway Co.*, *supra*. In *Davis* v. *Railway*, 53 Ark. 117, the court seems also to have relied upon *Needham* v. *Railway Co.*, *supra*. In the case of *Hedrick* v. *Navigation Co.*, 4 Wash. 400, decided by the supreme court of Washington in 1892, the statutes treated of are very different from our own, and the case is not authority for the contention made for it.

It is claimed that, in construing these acts, the amendment of 1885 of the survival act must speak from the date of the original act. This is undoubtedly true. But it has never been contended in this State, so far as I can ascertain, until the present action was brought, that a cause of action survives for a negligent injury, or for an assault and battery, where death results from the wrongful act, though these two statutes have been on the statute books for 50 years, and the amendment of 1885, as to negligent injuries, over 12 years. Apparently it was thought by the profession that actions in such cases must be brought under the death act, as no one ever before claimed that two actions would lie for the same wrongful act. From the history of the cases in this State, it is at once

apparent what the legislative intent was in passing the amendment of 1885. Prior to that time, if the party negligently injured brought suit for damages, and died, during the pendency of the case, from some other cause than the negligent injury, the suit immediately abated, and no right of action accrued to his personal representatives under sections 8313 and 8314, because his death was not the result of the wrongful act or omission. The profession was often confronted with this condition, as all such suits abated by the death of the party. But since 1848, when death resulted from the wrongful act, actions could be maintained under the death act. It was not necessary to amend either statute to give a right of action where death did result from the wrongful act. That right already existed. The purpose of the legislature, therefore, was to provide a remedy when one was lost by the death of the party, by the survival of the action which the party himself might have brought in his lifetime for wrongful injuries not resulting in death, and which cause of action did not survive under the former acts.

The only logical construction of these statutes, so as to give effect to both, is that the death act applies to cases of death caused by wrongful injuries, while the survival act applies to cases of personal injuries not causing death. If these two acts had been passed at the same time, each being embodied in different sections of the same act, what ground would this have afforded for the contention that the survival section applies to injuries resulting in death? We should then have to reconcile and render operative both sections, as now. The question of the legislative intent of the survival provision in reference to injuries causing death would still be open. The illogical result of holding that the survival provision was intended to cover cases of wrongful killing would still be presented, and would force the conclusion that the legislature intended that the survival provision should apply only to personal injuries not causing death. If we start with the survival act as in existence at the date when the death act

was passed, the result is not changed. We then have an act which provided for the survival of actions for personal injuries, followed by another giving a right of action for personal injuries resulting in death. It cannot be contended that the survival act conferred a right of action for wrongful killing. More definite and specific language indicative of the legislative purpose to do this would be required. In Illinois the death act was passed first. In *Holton* v. *Daly, supra,* both these Illinois statutes were construed, and it was held that both should be given effect; that, where death occurred from the injury, the death act applied, and, where the person died from some other cause than the injury, the survival act applied. This decision was not based upon the fact that the death act was first passed. In Rhode Island the survival act was passed first; and the court, in the *Lubrano Case, supra,* construed these statutes with the same result as reached in *Holton* v. *Daly,* and by the same reasoning, that both acts must be construed together. In the *McCarthy Case, supra,* it appeared that both acts were passed and took effect upon the same day, and effect was given to both, and it was held that the survival act applied to cases only where the death resulted from some other cause than the wrongful act. In all the cases cited by counsel where a different result has been reached, the decisions have been based upon the ground that Lord Campbell's act created a new cause of action. I think there is nothing, either upon principle or authority, in the fact that one act was passed before the other, which affects the construction to be given these statutes. The real question is (both statutes being in force), how should they be construed so as to give effect to both? And I think the only logical construction is that given by most of the cases; that is, that the survival act applies to cases of negligent injuries to the person that are not fatal, and that Lord Campbell's act applies to fatal cases.

But it is suggested that another view might be taken of these statutes, which would give a definite and certain

·rule; that is, that where a person is injured, and· sur-·vives the injury for a time, a right of action accrues to ·him, which survives in case of his death before judgment, and that in such case the death act has no application; but that, if the person is killed outright, no right of action ·could accrue to him, and therefore none could survive, and the death act would necessarily furnish the only relief. Let us see how this construction would leave the parties ·who were dependent upon the deceased. Under the sur-·vival act, the amount recovered goes into the estate for the benefit of creditors, and, if the estate be insolvent, the ·creditors might receive every dollar of the amount. Is·it possible that the legislature was so solicitous for the cred-·itors of the deceased that a limitation was put upon the death act, and a recovery under that act (the proceeds of which go to the dependent ones) made possible only when the death was instantaneous? To illustrate: Suppose A. is 30 years of age, has a wife and children, earns $125 per month, and receives an injury which he survives one hour. During that hour a right of action has accrued to him. The death act, then, has no application to the case, and no recovery can be had under it. The administrator, under such a construction, could recover under the survival act for the pain and suffering caused by the injury, which might be merely nominal, and this would go to the cred-itors if the estate were insolvent. If the action could be brought under the death act, the widow and children ·would receive the whole of the fund recovered, and the ·damages would be founded upon the pecuniary loss of those dependent upon the deceased. It cannot be possible that the legislature ever intended such a limitation upon the death act. A recovery under the death act has always been permitted in this State when the death results from the wrongful act, and this without regard to whether the ·death was instantaneous or not.

· In *Van Brunt* v. *Railroad Co.*, 78 Mich. 530, it ap-·peared that the plaintiff's intestate was injured January 1, 1888, and died from the injuries on the next day. On

the trial it was shown that the deceased was an unmarried man, and had no one dependent upon him for support. The court below directed the verdict in favor of defendant. In this court the case was fully considered, and it was assumed that, if the plaintiff had been able to show pecuniary loss by next of kin, a recovery might be had. A point was made that a recovery might be had under the survival act, and that point overruled.

In *Hunn* v. *Railroad Co.*, 78 Mich. 513 (7 L. R. A. 500), plaintiff's intestate, a fireman, was killed in a collision of defendant's trains. The action was brought under the death act. Just how long he survived the injury does not appear, but that fact was ignored. The case was reversed upon the ground that the court improperly admitted certain testimony, and a new trial was granted.

In *Sweet* v. *Railroad Co.*, 87 Mich. 559, plaintiff's intestate was injured by striking against a shed adjacent to the track. He lived 30 minutes after the accident. The action was brought under the death act, and judgment was rendered for $5,000, and was affirmed in this court. Mr. Justice GRANT dissented, but not on the ground that the action could not be sustained under the death act.

In *Richmond* v. *Railway Co.*, 87 Mich. 374, plaintiff's intestate, a street-car driver, was killed in a collision of the defendant's cars with the street car he was driving. The injury occurred about 4 or 5 o'clock in the afternoon, and he survived until the evening of the same day. The action was brought for the benefit of the mother and an invalid sister, and a recovery had under the death act. The judgment was for $5,313, and was affirmed in this court. Justices GRANT and CHAMPLIN dissented, but not upon the ground that the action could not be maintained under the death act.

In *Schlacker* v. *Mining Co.*, 89 Mich. 253, the action was under the death act. The plaintiff's intestate was injured, and survived several days. The fact that the death was not instantaneous was ignored. The judgment was reversed, and a new trial ordered.

In *O'Donnell* v. *Railway Co.*, 89 Mich. 174, though the deceased lived about an hour after the injury, the action was brought under the death act, and no one questioned that the act was applicable if the circumstances had been such that a recovery might have been had.

In *Pennington* v. *Railway Co.*, 90 Mich. 505, plaintiff's intestate was injured while switching cars. He survived six hours. The action was brought under the death act. Plaintiff recovered in the court below for the pecuniary loss sustained by the widow and children, and for the expense of his care, nursing, and funeral expenses. While the case was reversed, no one questioned the right of recovery upon the ground that the action could not be maintained under this act, or questioned that the damages claimed could be recovered as claimed if the defendant had been guilty of the several acts of negligence averred in the declaration.

In *Racho* v. *City of Detroit*, 90 Mich. 92, it appeared that the plaintiff's intestate was injured June 25, 1889, and died June 10, 1890. No action was instituted in the lifetime of the intestate. After his death the widow, as administratrix, brought suit under sections 8313, 8314, 2 How. Stat. The lower court directed verdict and judgment in favor of defendant. That judgment was reversed, and a new trial ordered; it being held that the widow, as administratrix, could recover under the above sections of the statute.

Not one of these cases could have been maintained if these statutes had been construed as now contended for, for in no case was the death instantaneous. Other cases of like character might be cited. I have examined the cases with some care, for the purpose of ascertaining in what proportion of them the death was shown to have been instantaneous, and find but very few. If, therefore, the death act can be applied only to cases where the death is instantaneous, it should be amended in order that the widow and children of the deceased may have some benefit under it. From the cases it appears that few persons were

killed who did not have some one dependent upon them, and that few were killed outright. Are we, by construction of the statute, to cut off all the rights which such dependents may have? No case can be found in this State giving such construction, though this statute (the death act) has been upon the statute books for upwards of 50 years. I am aware that in Maine this construction is given to a similar statute. *State* v. *Maine Cent. R. Co.*, 60 Me. 490. But in no other jurisdiction is such a limitation put upon the death act, that I am aware of. In Massachusetts a contrary view is expressly held under a statute similar to the Maine statute. *Com.* v. *Metropolitan R. Co.*, 107 Mass. 236.

It should be held that the plaintiff could not maintain this action under the first count of the declaration. The only remedy was under sections 8313 and 8314.

GRANT, C. J., concurred with LONG, J.

MONTGOMERY, J. (*dissenting*). The plaintiff brought an action based on the negligence of the defendant company, resulting in the death of the plaintiff's intestate. The evidence shows that, while deceased was a passenger on one of defendant's trains, a collision occurred with another of defendant's trains on the same track; that the car in which deceased was riding took fire; that, when she was extricated from the car, life was extinct. The plaintiff offered testimony which it is claimed shows that death was not instantaneous. The declaration contains three counts: The first, based upon the cause of action which accrued in favor of the deceased for pain and suffering caused by the injury; the second, for the loss of personal property in the possession of the deceased at the time of the accident, and consumed by fire; and the third count, on the statute permitting a recovery of the pecuniary loss sustained by the next of kin in case of death caused by the wrongful act of another. The verdict of the jury was taken separately on each count, and was for the plaintiff in the sum of $1,000 on the first count, and also for the

plaintiff in the sum of $110 on the second count, and for defendant on the third count. The defendant brings error, and contends that there is no testimony fairly tending to show that the decedent's death was not instantaneous, and, further, that under our statute no right of action in favor of the administrator generally survives for injuries causing death, but that in such case the sole remedy is under the statute giving relief to the next of kin. Counsel on both sides are to be commended for the instructive briefs which have been furnished, and which have been of great aid to the court.

1. The question which lies at the threshold of the case is whether a cause of action lies in favor of the administrator, under section 7397, 3 How. Stat., as amended in 1885, or whether in case of death the remedy given under sections 8313 and 8314 is exclusive. This question has arisen elsewhere under statutes somewhat similiar to ours, and the decisions are inharmonious; nor are they in all cases to be reconciled on differences which exist in the terms of the statutes. Before entering upon a discussion of the cases reference should be had to the history of our legislation, with a view of ascertaining, if possible, whether the legislative intent can be clearly gathered therefrom. The act embodied in sections 8313 and 8314 is substantially a re-enactment of Lord Campbell's act, omitting the preamble and the third section. Our statute provides that whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action, and recover damages, in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. The second section provides that the action shall be brought in the names of the personal representatives of the

deceased, and that the amount recovered shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate, and that in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered. This statute was first enacted in 1848, and amended in 1873. Section 7397, as it now reads, is as follows:

"In addition to the actions which survive by the common law, the following shall also survive; that is to say: Actions of replevin and trover; actions of assault and battery, false imprisonment, for goods taken and carried away, for negligent injuries to the person, and actions for damage done to real or personal estate."

Except for the interpolation of the words, "for negligent injuries to the person," which were incorporated in 1885, this section reads precisely as it has since the adoption of the Revised Statutes of 1846, and was therefore in force at the time of the adoption of Lord Campbell's act, in 1848.

The inquiry naturally suggests itself, What were the rights under section 7397 before Lord Campbell's act was adopted? Could a recovery have been had by the executor for an assault and battery committed on the person of his testator, resulting in the latter's death? It is contended by the defendant's counsel that section 7397 was intended to apply to pending actions, and was intended to provide for the revival of the action when commenced by the deceased in his lifetime; and this view is supported by considerations of great weight, among which is the fact that this statute is found in chapter 261, 3 How. Stat., the title of which is "Of Death, Marriage, or Other Disability Occurring After the Commencement of the Suit." If the question were altogether new, we should strongly incline to the view presented by defendant's counsel; but as early as 1882 this question was before the

court, and in the case of *Rogers* v. *Windoes*, 48 Mich.
628, it was held that the section in question was intended to
provide for the survival of the cause of action.   It will be
seen, therefore, that when the words providing for a sur-
vival of the cause of action in this case were incorporated
into, and became a part of, section 7397, that section as it
theretofore existed had a judicial construction; and it is fair
to assume that the amendment in question was made in
view of such construction, and that, therefore, the legisla-
tive intent was to provide for the survival of the cause of
action in the cases specified, as by the amendment of 1885
the right to recover for injuries resulting from negligence
is placed on the same plane as the causes of action enu-
merated in the section before its amendment.

The question recurs, What were the rights, as to injuries
causing death, prior to the act of 1848?   Could a recovery
for damages prior to the death of the injured party have
been had?   We think this question should be answered in
the affirmative.   Any other conclusion must rest upon the
idea that the legislature, by providing in section 7397 that
the action for assault and battery should survive, intended
that, if the injuries were not severe enough to result in
death, an action might lie by the executor, but, if the
assault were of so aggravated a character as that death
ultimately resulted from it, no action could be maintained.
To what extent, then, was the statute of 1848 intended to
amend or repeal the provisions of section 7397?   Having
in mind the rule that repeals by implication are not
favored, we turn to the act of 1848 to ascertain if it is
reasonably clear that the legislature intended to substitute
for the provisions of section 7397 the provisions of the
later section in all cases in which death ensued.   There
are some considerations which tend to support the view
that such was the intent,—as the one that it is not to be
inferred lightly that two remedies are given for the same
evil, and that the act of 1848 is apparently broad enough
to cover all cases in which death results from the wrong-

117 MICH.—23.

ful act of another. The remedies afforded are, however, quite distinct and different. Under section 7397, it is clear that no recovery could be had by the executor because of the *fact* of the death of his testator, but he could recover for such injuries as his testator sustained in his lifetime, notwithstanding his death; while, under the act of 1848, the recovery is limited to the pecuniary loss *resulting from such death* to the persons who may be entitled to such damages when recovered. It is clear, therefore, that the act of 1848 does not cover the whole ground, as, if the case be such that the widow or next of kin is unable to show pecuniary loss *resulting from the death,* no recovery can be had, notwithstanding the deceased may have been entitled to substantial damages if he had taken action in his lifetime, and notwithstanding the express provision of section 7397 that his cause of action shall survive.

It is generally held—and, we think, properly—that, if the deceased settles for the injuries received in his lifetime, or recovers his damages in an action, an action cannot be maintained after his death, under Lord Campbell's act. Cooley, Torts, 264. Defendant's counsel contend that this view tends to show that two causes of action are not created. It is of equal force to show that the remedy under the act of 1848 is *not exclusive.* But in the wording of the act of 1848 is found authority for this limitation upon the right given in favor of the widow or next of kin. Under this act it is only where the default or wrong would have entitled the injured party to maintain an action, had death not ensued, that the remedy is given to the widow or next of kin. Plainly, if the injured party had recovered damages or settled for the injury, he would not at the time of his death have been entitled to maintain the action if death had not ensued. See *Littlewood* v. *Mayor, etc., of New York,* 89 N. Y. 24 (42 Am. Rep. 271); *Legg* v. *Britton,* 64 Vt. 652.

Judge COOLEY, in his work on Torts, at page 264, says:

"It is seen, on a perusal of this statute, that it gives an

action only when the deceased himself, if the injury had not resulted in his death, might have maintained one.    In other words, it continues, for the benefit of the wife, husband, etc., a right of action which at the common law would have terminated at the death, and enlarges its scope to embrace the injury resulting from the death.    If, therefore, the party injured had compromised for the injury, and accepted satisfaction, previous to the death, there could have been no further right of action, and consequently no suit under the statute."

It is hardly accurate to say that under the statute of 1848 the right of action is continued for the benefit of the widow or next of kin; for this court has held repeatedly that in the action under this statute no recovery could be had for the pain and suffering preceding death, nor, indeed, for any damages resulting to the injured party which precede his death.    Nor, as we have seen, can there be any recovery at all, under the statute of 1848, unless, *in addition* to the injury and the *resulting death*, the fact exists that, by withdrawing the means of support, a direct pecuniary loss is shown to have resulted to some one or more of those who take of the estate of the injured party under the statute of distribution.    Certainly this statute does not continue the right of action in all cases.

It should be held that two distinct actions are provided by law,—the one under section 7397, and the other under sections 8313 and 8314.    This view was indicated in *Hurst* v. *Detroit City Railway*, 84 Mich. 544, and again in *Racho* v. *City of Detroit*, 90 Mich. 95, and is supported by *Vicksburg, etc., R. Co.* v. *Phillips*, 64 Miss. 693; *Davis* v. *Railway*, 53 Ark. 117; *Bowes* v. *City of Boston*, 155 Mass. 344 (15 L. R. A. 365); *Needham* v. *Railway Co.*, 38 Vt. 294; *Hedrick* v. *Navigation Co.*, 4 Wash. 400; *Belding* v. *Railroad Co.*, 3 S. Dak. 369.    See, also, *Whitford* v. *Railroad Co.*, 23 N. Y. 465.

In a carefully prepared series of articles published in 28 Am. Law Reg. (N. S.) 385, 513, 577, the statutory pro-

visions of the various States are reviewed, together with the decisions which had been rendered up to that date (1889); and the conclusions reached are: *First*, that the right of action under Lord Campbell's act is a new cause of action; and, *second*, that, where there is likewise a survival act, two remedies are intended. The learned author says:

"As to the right to maintain two actions after the death of the injured person (supposing him not to have recovered damages in his lifetime), where there is, in addition to the special act, a general provision of law making rights of action for injury to the person survive, it seems that such right should be ordinarily recognized, in the absence of an express provision to the contrary. The opposite and inconsistent courses adopted by different courts in the attempt to escape from this result seem to convict them all of being without warrant."

This criticism of decisions which deny the existence of two remedies is fully justified. In Illinois it is held that the remedy under Lord Campbell's act is exclusive. *Holton* v. *Daly*, 106 Ill. 131. The same view is taken in Kansas (*McCarthy* v. *Railroad Co.*, 18 Kan. 46 [26 Am. Rep. 742]), and in Rhode Island (*Lubrano* v. *Atlantic Mills*, 19 R. I. 129); while in Kentucky it is held that the election of the legal representative determines which action may be maintained (*Conner's Administratrix* v. *Paul*, 12 Bush, 144), thus leaving the right conferred under Lord Campbell's act dependent upon the question of whether the executor shall be more concerned for the creditors than for the beneficiaries named in the act,—a view which I regard as totally untenable. In Vermont, in *Legg* v. *Britton*, 64 Vt. 652, a view which to me seems equally untenable was taken, viz., that a previous recovery under the survival act would bar a recovery under Lord Campbell's act, although the converse is not declared.

In two of the States in which the existence of two remedies is denied, the reasoning of the court does not meet the reasoning which I have attempted in this opinion. On

the contrary, in the leading case which denies the existence of two remedies (*Holton* v. *Daly, supra*), the reasoning of the court sustains the conclusion which I have above stated.    It appears from that report that a death act corresponding to Lord Campbell's act was enacted February 12, 1853.    In 1872 an act was passed providing that certain actions named therein, including "actions to recover damages for an injury to the person,  *  *  *  shall survive."    The question considered was whether this act gave the executor a right of action for an injury resulting in death, over and above that provided by the previous statute.    It was held that it did not, and this conclusion was reached by applying the rule that repeals by implication are not favored, and where statutes are seemingly repugnant they should, if possible, be so construed as that the latter may not operate as a repeal by implication of the former.    Under this rule the court held that the survival act, having been passed after the death act, should be construed as applying to such personal injuries as were not covered by the death act; that is, injuries which did not result in death.    The chronology of our legislation is the reverse of this.    The survival act (section 7397) was in force before the death act was passed.    It is clear that under the former statute, when enacted, a right of action for injury resulting in death survived.    If, therefore, the reasoning of the court in *Holton* v. *Daly* be accepted (that is, that repeals by implication are not favored, and that statutes seemingly repugnant should be so construed as, if possible, to give effect to both), a result exactly opposite to that which was reached in *Holton* v. *Daly*, and which accords with the conclusions already stated, seems inevitable.    In Kansas the two sections of statute were given effect on the same day.    The court held that they were to be construed *in pari materia.* It will be seen, therefore, that the decisions which we have cited from that State do not conflict with the reasoning which I have adopted, as the rule respecting repeals by implication could not be applied.

The authority of the Kansas case is weakened by the fact that Judge Brewer, who was a member of the court at the time the judgment in the *McCarthy Case* was pronounced, later, in the case of *Hulbert* v. *City of Topeka*, 34 Fed. 510, expressed grave doubts as to its correctness. The only American case which I have found which denies the existence of a right under the survival act, where both acts are in force, the survival act being prior in point of enactment to Lord Campbell's act, is the case of *Lubrano* v. *Atlantic Mills*, 19 R. I. 129; and this case is largely based on *Holton* v. *Daly*, *supra*, which we have seen does not conflict in its reasoning with the views expressed herein.

It will be seen that the courts have encountered great difficulty in construing these statutes, which difficulty has been aggravated by any attempt to depart from the letter of the statutes. My conclusion is that the act of 1848 was not intended to repeal the survival act of 1846; that the amendment of 1885 to section 7397 is to be treated as though it had been a part of the statute from the first. End. Interp. Stat. § 294. I do not discuss whether these actions can be joined, as the assignments of error do not raise the question.

2. Under statutes similar to our section 7397, it has been generally held that, where the death was instantaneous, no recovery could be had. Tiff. Death Wrongf. Act, § 74, and cases cited; *The Corsair*, 145 U. S. 335. And recovery cannot be had where the evidence fails to show whether or not the death was instantaneous. *Corcoran* v. *Railroad Co.*, 133 Mass. 507; *Riley* v. *Railroad Co.*, 135 Mass. 292. The evidence in this case was given by one Allen, who witnessed the collision, and by Dr. Sweetland, who witnessed the autopsy. Allen testified that the car in which decedent was riding and one of the other train were "telescoped." The witness testified that he first went to the engine, and next went into one baggage car, before going to the telescoped car; that this took about three or four minutes; that, when he got to the tele-

scoped car, somebody was alive there; that, not to exceed a minute or two after this, the car was afire. He did not know decedent, and knew nothing of the exact time of her death. It appears by the testimony that decedent, when taken out, was badly burned. Dr. Sweetland testifies that he was present at the *post mortem*, and described the condition of the body; that the legs and arms were completely burned away; but it is inferable that the vital parts of the body were not so disfigured but that it could be seen whether any fatal injury had been received from the collison. He testified that, in his opinion, the death was caused from burning, and that death from burning cannot be instantaneous. I think this testimony presented a question of fact for the jury. *Nourse* v. *Packard*, 138 Mass. 307; *Pierce* v. *Steamship Co.*, 153 Mass. 87.

The judgment should be affirmed.

HOOKER, J. (*dissenting*). The plaintiff's intestate lost her life through a collision and consequent burning of the car in which she was riding upon the defendant's railroad. The plaintiff recovered a judgment of $1,110,—$1,000 upon the first and $110 upon the second count of the declaration. A verdict was rendered for the defendant upon the third count. The defendant has brought error. The questions to be discussed pertain to the construction to be given to two statutes of this State, viz., 3 How. Stat. § 7397, and 2 How. Stat. §§ 8313, 8314, the first of which, for convenience, we will call the "survival act," and the last two sections the "death act."

Section 7397 existed in 1846, but not in its present form; the words "for negligent injuries to the person" having been inserted by amendment in 1885. Sections 8313 and 8314 were enacted in 1848 (Act No. 38, Laws 1848) substantially in their present form, though a slight amendment, not affecting this case, was made in 1873 by Act No. 94, Pub. Acts 1873. These several sections now read as follows:

"SEC. 7397. In addition to the actions which survive

by the common law, the following shall also survive; that is to say: Actions of replevin and trover; actions of assault and battery, false imprisonment, for goods taken and carried away, for negligent injuries to the person, and actions for damage done to real or personal estate."

"Sec. 8313. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action, and recover damages, in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 8314. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and the amount recovered in every such action shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered."

The plaintiff's declaration contained three counts; the first and second being laid under section 7397, respectively, claiming damages for the injury to the person and property of the intestate. The last count is based upon sections 8313 and 8314, and claims damages for causing the death of the plaintiff's intestate.

The defendant's counsel contend that there should have been no recovery under the first count, for two reasons:

1. Because the death was instantaneous, and therefore there was never a right of action in the intestate, and consequently none to survive.

2. Because, when death results from a negligent act before judgment rendered in an action brought by the deceased, the survival act does not apply, and redress must be sought under the death act.

It is contended by plaintiff's counsel that rights of action

may exist under both statutes when the death is not instantaneous, and that they may be joined in one action. If this contention of the plaintiff's counsel be correct, there would seem no good reason for holding that the recovery of a judgment by the injured person should be a bar to an action under the death act for his subsequent death, as recovery in such case is permitted, not upon the injury sustained by the deceased, but upon the pecuniary injury to the survivors, occasioned by his death. Yet we find the courts generally holding that such recovery is a bar to a subsequent action by the administrator, and we think the legislature intended that it should be. Had the intention been otherwise, it is probable that the act would have permitted each survivor to bring and prosecute his own action, for his own benefit, instead of requiring it to be brought by the personal representative, and permitting the proceeds of the litigation to be distributed among those entitled to the personal property of the decedent, which some of the provisions of the act seem to require; thereby giving portions to persons who confessedly were not injured, and upon whose behalf no recovery could be had, to the injury of those who suffered such injury as was recovered for.

The greater number of the cases discussing the question deny the dual right of recovery (28 Am. Law Reg. [ N. S.] 528, 577); and several cases sustain the proposition that, in case death results from the wrongful act before judgment, the death act, and not the survival act, must be relied upon, as contended here. The various cases in the different States arise on varying statutes, and are supported by different reasons; but, as already said, they generally concur in holding that there is a single remedy, and they are not so uniform in holding that death deprives the representatives of a right of action under the survival act, and confers a right to another action, for a different ground and measure of damages, upon one or several of their number, to the exclusion of some. If we are to sustain the contention that the death act is exclusive, it

must be by holding that it repeals by implication so much of the survival act as before the enactment of the death act applied to and supported actions by representatives for rights of action which accrued to persons injured through assaults and batteries, and that the amendment, whereby personal injuries caused by negligence were added, falls within the same rule, and was not intended to apply to cases where death resulted from the injury; thus ingrafting upon the statute an exception not expressed, and which clearly was not intended when the first statute was passed. This means that there can be no survival of an action in the cases where death ultimately results from the wrong. It would be lost by death, not only where there are representatives to suffer by the death, and who may therefore recover for their pecuniary injury, but also where there is no pecuniary injury to any one through death, in which case all right of action would be lost; and this rule would go so far as to put an end to pending suits, at whatever their stage before verdict, and notwithstanding the fact that large sums had been expended, which would be lost to the estate. The case of *Indianapolis, etc., R. Co.* v. *Stout*, 53 Ind. 143, so holds.

I am of the opinion that these two acts are to be construed together; that they were designed to enlarge, rather than to diminish, the rights of recovery; and, as held of the later act in *Merkle* v. *Township of Bennington*, 58 Mich. 158 (55 Am. Rep. 666), that they are both remedial. I doubt if the death act was intended to prevent the survival of actions, though it is not so clear that it was intended to permit a recovery on both theories, or to allow an election of remedies, which the courts very generally deny. Indeed, I feel confident that such was not the intention.

There is one view of the law that might reconcile these two acts without doing violence to either, and give a definite and certain rule. It is, that where the person is injured, and lives after the transaction, a right of action ac-

crues to him, which survives in case of his death before judgment, and that in such case the death act has no application.    But, if the person is killed outright, no right of action could accrue to him, therefore none could survive, and consequently the death act would necessarily furnish the only relief.    Some cogent reasons suggest themselves for this view, if we consider the rule at common law, and the nature of the statutes.    At common law, rights of action growing out of torts did not survive, and there was no recovery allowed for causing death.    Both were considered to be against public policy.    That was the rule in Michigan until the legislature modified it by permitting survival in certain cases of tort.  This did not thereby change the law as to recovery for causing death in any case, which we may assume to have been still considered against public policy.    And, if a person was instantly killed, it will probably not be contended that the representatives would take a right of action under this act; for how could it be, when, by reason of the simultaneous wrongful act and death, no right of action could accrue to the deceased.    But later an act was passed modifying that rule also.    This was not a sweeping act.    The matter was approached cautiously, and with evident reverence for the rule of public policy.    The widow and next of kin were recognized as sufferers by the death of a husband and relative, and it would have been easy to give to each a right of action for the loss or injury occasioned by death.    But this was not done.    The right of action was carefully limited to cases where a direct pecuniary injury could be shown.    If it had stopped here, it might have existed in all such cases where death followed as a result, and whether a recovery had been had by the deceased or not, and notwithstanding the survival of his right of action if there had not been a recovery by him.    But it did not stop there.    It was limited to cases where the act, neglect, or default would have entitled the deceased to maintain an action and recover, but for the death.    Manifestly, had death not been immediate, an action would have accrued,

which might have been maintained and recovery had by the deceased, if he should live long enough; and, if not, then by his representatives, under the survival act then existing. But, on the other hand, if death was instantaneous, a right of action could not accrue to him, though it would have done so, as we have already seen, had he lived long enough to suffer pain or injury of any kind.

Now let us look at the act. What cases are there in which the representatives may recover for death? Is it not in those cases where the act would have given to the deceased a right of action, had he not died simultaneously with the act, but which did not and could not on that account accrue to him? See Tiff. Death Wrongf. Act, §§ 73-75, inclusive, and cases cited; 28 Am. Law Reg. (N. S.) 393, 394, and cases cited. Whatever may be indicated by these authorities as to actions by administrators where death was instantaneous, under the various statutes, it does not seem to be contended that a right of action could accrue to a man who was stricken instantly dead by the wrongful act. Is it not plain that the survival act was impotent to afford relief in such cases, and that the death act applied to such cases? Our attention has been called to no case where it has been held that the death act does not cover such a case. But, while this may account for the enactment of the death act, it does not necessarily follow that such act is not broad enough to cover cases where death was not immediate, but it seems quite as probable that the legislature should have intended this construction, as that it was designed to supplant the survival act in so important a class of cases as those based upon negligent injuries resulting in death; and it is not strange that defendant should not have raised and insisted upon the construction under discussion, i. e., that, when death has ensued after the lapse of time, recovery could only be had under the survival act, thereby subjecting it to a judgment for all the pain and suffering of the deceased.

A majority of the courts that have considered these

questions have found in these statutes (for they are usually associated in the statutes of the different States) that which precludes the double remedy, and which makes the recovery by the deceased a bar to a subsequent action under the death act.  The strongest arguments against the construction suggested herein are that other courts have not usually discussed this theory, and have applied the remedy under the death act to cases when death was not immediate, which it must be admitted has been often done,— a practice which is clearly inconsistent with this view.   Our attention has not been called to any case where the reasonableness of such a construction has been denied.   On the other hand, it is said by Ross, C. J., in *Legg* v. *Britton,* 64 Vt. 652, that:

"In Maine, and some other States, it is held that the acts of those States, framed after Lord Campbell's act, give a right of action only when instant death follows the injury."

See *State* v. *Maine Cent. R. Co.,* 60 Me. 490; *State* v. *Grand Trunk Ry.,* 61 Me. 114 (14 Am. Rep. 552).

It is possible that this construction is foreclosed by decisions heretofore made by this court, and it is unnecessary to decide the question, because the jury found a verdict for the defendant upon the count based upon this statute; but, to my mind, the foregoing are conclusive reasons for believing that it was not the intention of the legislature to give the double remedy.

In my opinion, the judgment should be affirmed.