DOLSON *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

1. RAILROADS—NEGLIGENT INJURIES — TRESPASSERS — ASSUMPTION OF RISK.

A servant of the consignee of a car load of stone, who, to the knowledge of the switching crew of the company, and in accordance with his custom, remains on the car, which he has commenced to unload, while it is being switched from its place and returned, does not become a trespasser in so doing, or assume the risk of the company's negligence in moving the car; and, if the car is shunted with such unnecessary force as to throw him therefrom, the company is liable for the resulting injury.

2. DEATH BY WRONGFUL ACT—PERSONAL INJURIES—SURVIVAL OF ACTIONS—REMEDIES.

3 Comp. Laws, § 10427, conferring a right of action for death by wrongful act or neglect, and section 10117, providing for the survival of actions for negligent injuries to the person, do not give a double remedy for the same wrongful act. Nor is the remedy under the latter section (the survival act) excluded by the fact that death ultimately ensued from the injury. On the contrary, such section applies wherever a cause of action accrued to the deceased in his lifetime; the former section (the death act), only where the death prevented such cause of action from vesting,— in other words, where the death was instantaneous.

3. SAME.

Hence, where a decedent survived his injuries for some 12 hours, being conscious a part of the time, the remedy of his administrator was under the survival act, and not under the death act.

MONTGOMERY, C. J., and MOORE, J., dissenting, being of opinion that an action could be maintained under both statutes.

Error to Jackson; Peck, J. Submitted December 7, 1900. Decided October 22, 1901.

Case by Daniel Dolson, administrator of the estate of Daniel Dolson, Jr., deceased, against the Lake Shore & Michigan Southern Railway Company, to recover damages for negligent injuries to decedent, resulting in his death. From a judgment for plaintiff, defendant brings error. Reversed in part.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-Danner,* of counsel), for appellant.

*Wilson & Cobb,* for appellee.

Montgomery, C. J.   This action is brought by Daniel Dolson, Sr., as administrator of the estate of his deceased son, Daniel Dolson, Jr., whose death occurred on the 3d day of October, A. D. 1898, under the following circumstances: Deceased and his half brother, James Davis, were engaged in unloading crushed stone from gondola cars standing on defendant's team track in the yards in the city of Jackson. The stone was owned by one Robert Lake, a business man of Jackson, and was being unloaded into wagons for him by Davis and deceased. There were three cars of this stone standing upon the track at the north end of the yard, at the usual place of unloading into wagons. Standing on the track next north of the stone cars was a box car loaded with granite, and north of that a short distance, on the same track, was a car loaded with hoops. At the time of the accident, Davis and Dolson had unloaded the north car of stone, and about one-half of the middle car, beginning at the south end. These gondola cars are about 30 feet long, with boxes 3 feet high.

About 11 o'clock a. m., yard brakeman French backed down from the south on the team track with an engine and four cars, and told Davis and Dolson that he wanted to take out the car loaded with granite that was on the track beyond them, and that he was going to pull out the stone cars, and for them to pull in their screen. French then coupled to the stone cars, and went south, pulling out the whole string, including the empty stone car and

the car of granite. As was their custom, Dolson and Davis remained in the half-unloaded car. Dolson stood on the east side of the car, about six feet from the south end, leaning against the side of the car. Davis stood near the south end of the car, on the west side. This was about the position of the men at the time of the accident, a few minutes later. French took the whole train south and through the switch. The switch was then turned, and the train backed north on the main track. The car of granite and the empty stone car were cut off, and left on the main track, and the train again went south through the switch, which was again turned, and set for the team track. The train then backed north through the switch onto the team track, the train then consisting of the two stone cars in the rear, then four cars and the engine.

After passing out onto the team track, the train being in motion, French cut off the two stone cars, and let them pass on to the north, at the same time saying to Davis to stop the cars where he wanted them. These two cars slowed up or stopped near the cattle-chute. The testimony is in conflict as to whether the cars did or did not come to a full stop. French, seeing that the two cars of stone were not going to run down the track far enough, signaled the engineer to kick them farther back. The engineer then went back with the engine and the four cars, and overtook the two cars of stone at or near the cattle-chute. Whether the stone cars had then come to a full stop or were still in motion is uncertain. The fact is, however, that the cars came together when the south end of the half-unloaded car was just opposite the cattle-chute. It is claimed on the part of plaintiff that the stone cars had come to a full stop, and that the engine and the four cars struck the south stone car with such great and unnecessary force that Dolson, who was standing back about six feet from the south end of the car, leaning up against and having hold of the side of the car with both hands, bracing himself, was thrown over the south end of the car between the two stone cars, and was run over by the south stone

car.   He was run over by the trucks under the north end
of the south stone car, and, to all appearances, drew him-
self from under the car before the south trucks reached
him.   His injuries were such as to leave no hope of his
surviving them, and he died about midnight of the same
day, being a part of the time conscious.

The declaration contained two counts; the one under the
survival act, so called, and the other under the death act.
A recovery was had under each count, in the sums of
$1,200 and $800, respectively.   The two principal questions
argued are:   *First*, whether plaintiff can recover at all;
and, *second*, whether, if entitled to recover, he is entitled
to maintain an action under both the survival statute and
the death act, and, if not, under which one he is entitled
to recover.

The instruction of the circuit judge upon the first ques-
tion was as follows:

"The term 'negligence,' as used in this case, means a
failure by the defendant to perform some legal duty it
owed to the deceased at the time of the accident.   It was
the defendant's duty, when it determined to move the car
on which the deceased was working, and switch it back
to the place where it originally stood, if the defendant's
agents who had charge of and performed that work knew
that the deceased was standing on the car during the
operation, to do the switching with such care and pru-
dence as a reasonably careful and prudent man would
exercise under the circumstances, and to run against the
cars, on one of which the deceased was standing, with
only such speed and force as was reasonably necessary
for that purpose under the circumstances.   It must be
assumed that it was necessary to use some speed and
force, or the result could not be accomplished.   The de-
fendant had the right to run against the stone cars with
sufficient speed and force to move them into their proper
positions.   In doing so the defendant was performing an
act necessary to be performed in the usual course of its
business; and the deceased boy, when he chose to remain
on the car during the operation, is chargeable with knowl-
edge that the defendant would and must use such speed
and force in running and switching the cars as was rea-

sonably necessary for that purpose, and to have taken the chances of any accident which might result from the use of that amount of speed and force. The use of such speed and force as were reasonably necessary, under the circumstances, to switch the cars, was lawful, and the defendant was not negligent in using it. And if the defendant ran its engine and connecting cars against the stone cars with unnecessary speed and force, the employment of such unnecessary speed and force was a negligent act, and constituted negligence, as charged in the first and third counts of plaintiff's declaration. The question, then, upon this branch of the case, for you to determine, is, Did the defendant use unnecessary force and speed, under the circumstances, in running its engine and connecting cars against the stone cars, upon one of which the deceased was standing at the time of the accident? This is a material proposition in the case, and I submit it to you as a question of fact, to be determined from the evidence bearing upon that subject."

We think that, as applied to the facts of this case, this instruction was correct. *Chadderdon* v. *Railroad Co.*, 100 Mich. 293 (58 N. W. 998); *Illinois Central R. Co.* v. *Anderson*, 184 Ill. 294 (56 N. E. 331).

Upon the question whether plaintiff is entitled to recover under both the death act and the survival act, my views have undergone no change since writing the opinion in *Sweetland* v. *Railway Co.*, 117 Mich. 350 (75 N. W. 1074, 43 L. R. A. 576). On the contrary, my views have been fortified by a re-examination of the cases. Since that case was decided, the supreme court of Wisconsin, in an able opinion, written by Mr. Justice Marshall, and concurred in by the entire court, has held that, under statutes similar to ours, the two remedies are given. *Brown* v. *Railway Co.*, 102 Wis. 137 (77 N. W. 748, 78 N. W. 771, 44 L. R. A. 579). In addition to the case of *Hurst* v. *Detroit City Railway*, 84 Mich. 539 (48 N. W. 44), cited in the *Sweetland Case*, our attention has been directed to the case of *Hyatt* v. *Adams*, 16 Mich. 180, the reasoning of which, in my judgment, supports the contention of plaintiff. The able opinion of Mr. Justice CHRISTIANCY can-

not well be epitomized without detracting from the force of that able justice's convincing reasoning, but deserves a careful reading.

It is suggested that the *Sweetland Case* decides that two remedies do not exist, and that all that now remains for decision is which remedy is open.    I do not so read the *Sweetland Case.*    In that case an action was brought with a count under the survival act and a count under the death act.    On the trial the defendant had a verdict under the count on the death act.    The plaintiff recovered under the survival act, and defendant alone appealed.    The judgment was reversed.    The holding, therefore, was that no recovery could be had under the survival act, under the facts of that case.    Justices GRANT and MOORE were of the opinion that the testimony showed that the death was instantaneous, and that for this reason no recovery under the survival act could be had.    Justice LONG held that, in any case where death results, no recovery could be had under the survival act.    In this view Justice GRANT concurred, but neither of the other justices assented to this view.    Justice HOOKER expressed the view that, in any case where the death was not instantaneous, the *survival* act fixed the remedy, and no remedy was given by the death act.    In this view none of the other justices concurred.    The writer of this opinion expressed the view that both remedies existed, and that the enactment of Lord Campbell's act by our legislature was not intended as a repeal of the survival act.    It will be seen that the *abstract* question whether two remedies were given was not before the court for determination.

The question is not different than it would be, if two separate cases were here.    In such an event, the question whether a remedy existed under the statute invoked would be presented for decision.    If a majority of the court were of the opinion that such a remedy was intended, would it not be applied ?    There can be but one answer to the question.    True it is that, in determining this question, it would be proper to take into account the question whether

another remedy was given by another statute, which was intended to exclude the one invoked; and, in deciding this question, any presumption, more or less strong, that the legislature did not intend two remedies, would be proper to be considered. But this would, of necessity, be but a means to an end, or a process of reasoning, the ultimate question being whether the plaintiff, in the particular case in hand, was entitled to the remedy sought. Under no procedure known to the law *can* the abstract question of whether two remedies exist be presented. If in fact two remedies do not exist, the result must be reached by the process of. *subtraction,*—*i. e.,* if a majority of the court decide for the exclusion of either remedy, *that* remedy is to be counted out; but if, on the other hand, a majority declare for the remedy, that remedy exists; if this be true as to both remedies, both exist.

I do not understand that any one contends that it is incompetent for the legislature to give remedies to two parties for the same wrongful act of another. *There is no declaration in either of the statutes that two remedies shall not exist.* The question which must be presented whenever either remedy is sought is whether a statute which *in its terms gives such remedy* is rendered inoperative by the provisions of the other statute. The survival act was first passed. What logic is there in the position of one who asserts that the death act did not repeal the survival act, but that the survival act alone applies to a particular case, and who, notwithstanding this view, *holds* the exact reverse, *i. e.,* that the death act *did* repeal the survival act, and that the death act alone applies to the case? It is impossible for me to find that this court has decided that two remedies do not exist, or that it should so decide until a majority of the court say that one or the other of the remedies sought is excluded by the other. This has not yet been done.

I understand, however, that a majority of the court are of the opinion that it should be held that, in a case where the death is not instantaneous, there can be no recovery

under the death act, so called. 3 Comp. Laws, § 10427. A suggestion is contained in the opinion of Mr. Justice HOOKER in this case that the language of the section in question that, "whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action," etc., is to be construed as excluding a recovery in all cases where a cause of action at any time vested in the injured party. I do not so read the statute, but construe it, as indicated in my opinion in the *Sweetland Case*, to mean that where, at the time of the death of the injured party, no cause of action existed or remained, the remedy under this act would be excluded. As was said in that case, if the injured party had recovered damages or settled for the injury, he would not, at the time of his death, have been entitled to maintain the action "if death had not ensued." See, upon this subject, *Littlewood* v. *Mayor, etc., of New York*, 89 N. Y. 24 (42 Am. Rep. 271); *Legg* v. *Britton*, 64 Vt. 652 (24 Atl. 1016). Clearly, the language of the act, limiting the recovery to cases in which the injured party would have been entitled to maintain an action, should be construed to define the character of the injuries and the circumstances under which they were inflicted, and the words "if death had not ensued" have relation to the time when the action, under section 10427, is planted.

Referring to the construction which is placed upon this statute in the opinion of Mr. Justice HOOKER, it is stated in his opinion in the *Sweetland Case* that it is possible that this construction is foreclosed by decisions heretofore made by this court. I think I have pointed out in my opinion, both in this case and in the *Sweetland Case*, that such construction was so foreclosed; and, if it was foreclosed in 1898, it is foreclosed in 1901.

I think the judgment should be affirmed.

HOOKER, J.   In the case of *Sweetland* v. *Railway Co.*,
117 Mich. 329 (75 N. W. 1066, 43 L. R. A. 568), a major-
ity of the court expressed the opinion that the law does
not permit recovery by an administrator under both of the
statutes which are there called, respectively, the "death"
and "survival" acts.   While we entertained different
views upon these statutes, the result was that the judg-
ment was reversed.   The question is now before us again
in a case where recovery has been had upon both statutes.

It has always been the policy of the common law not to
permit recovery for causing death, nor to permit the survi-
val of actions for personal injuries.   While Michigan was
still a territory, the rule as to the survival of actions for
personal injuries was abrogated by the passage of the sur-
vival act, which covered assault and batteries.   Under it
one receiving a mortal wound had a cause of action which
would survive.   As yet no action was given for causing
instantaneous death, though death following as a conse-
quence was practically covered in assault and battery
cases by the survival act, as stated.   In 1848 the death
act was passed, and it gave to the administrator a right
to recover for the benefit of the widow and next of kin in
certain cases.   This was not an absolute right to the
widow and child to recover, each for herself or himself,
the damages actually suffered, which would have been a
simple provision to make.   It was hedged about by limita-
tions.   Apparently the legislature was not yet prepared to
permit an administrator to recover for the death of the in-
testate such sum as could be wrung from a jury.   It was
only when it could be shown that the widow and next of
kin had suffered pecuniary injury.   Again, they were not
permitted to bring several suits; all must be recovered
through the administrator.   This implies, to my mind,
that it was intended that all damages should be recover-
able in one action.   As the law then stood, that was the
only recovery that could be had, after death, where the
death was caused by negligence, because the right of ac-
tion for such did not survive.   But, under the plaintiff's

theory, a double recovery might be had when death re-sulted from assault and battery. Aside from the improb-ability that the legislature would intentionally give the double remedy in one class of cases and not in the other, or that it repealed the survival act as to assault and bat-teries by implication, we find the language of the act limit-ing the right of action to a certain class of cases, viz., cases where the act, neglect, or default would, if death had not ensued, have entitled the injured party to maintain an ac-tion. We find, then, that, where death *prevented an ac-tion from accruing* to the deceased, this act gave a remedy, and in no other case; in other words, where the action was *not prevented from accruing*, it did not give a remedy. This section plainly proceeds upon the theory that death has prevented a right of action from vesting. Such would not be the case where a person lived after the injury, and it would be the case where the death was instantaneous. If this was not the legislative intent, why was this lan-guage inserted in the statute?

It seems clear to me that this act was designed to cover cases of instantaneous death, where there was no other remedy, and that it was not designed to give a double remedy in cases where assault and battery caused death, in which cases the survival act already furnished a com-plete remedy, giving to the next of kin *all of the redress* which the deceased would have been entitled to, and not making it dependent upon or limited to an amount of actual contribution to his or her support. It may be said that this view left no redress to the widow and next of kin for negligent homicides not instantaneous, because such did not survive under section 10117, 3 Comp. Laws, as originally passed, and would not be covered by this construction of section 10427. This is true, but it does not justify our disregarding a plain condition upon which the right of action was made to rest, viz., that the death prevent a right of action accruing to the deceased. Sub-sequently this omission was supplied by the insertion in the survival act of the words "for negligent injuries to

the person." So, as the law now stands, the right of action is readily determinable. If the death be not instantaneous, the administrator recovers under the survival act the full measure of damages for the benefit of the next of kin. If it be instantaneous, he recovers under the death act, for the same persons, a limited amount of damages, viz., for such pecuniary injury only as they can be shown to have suffered.

There has never been a time when the common law has deemed it wise public policy to permit speculation out of homicides, and the States have been conservative in permitting recovery for the death of a person. In New York a limit is placed upon the amount recoverable under the death act. I feel convinced that in our own State the policy has been to carefully limit recovery to actual pecuniary injury, and to one action, and not to permit it in those cases where the survival act is available. The sections of the statute are quoted in the opinion of the writer in the *Sweetland Case*. To my mind this is the only consistent view to be taken of these statutes. It furnishes a plain and reasonable rule, and, where there is doubt which act is applicable, a joinder of counts will afford ample protection. It is supported by the decisions of Maine and New Hampshire, as shown in the opinion in the *Sweetland Case*. There are many considerations mentioned in that opinion which are not repeated here, which are cogent reasons for this view, an important one being the effect on pending cases, which the survival act certainly was intended to save, but which fall by the death under another construction, leaving a recovery under the death act a doubtful contingency.

The judgment should be reversed as to the count upon the death act, and no new trial ordered, and affirmed to the extent of the recovery upon the count based on the survival act. We feel justified in denying costs to either party.

LONG and GRANT, JJ. We concur with Mr. Justice HOOKER in holding that a double remedy does not exist in this class of cases. These views were foreshadowed by us in the *Sweetland Case*, 117 Mich. 329 (75 N. W. 1066, 43 L. R. A.. 568). Inasmuch, however, as the majority of the court has determined in the present case, under the circumstances stated, that a recovery may be had under the survival act, we concur in that conclusion, as the testimony shows that the decedent survived for a space of time after the injury. If the injury had occasioned immediate death, no one questions but that the action must have been brought under the death act, and no other action would lie. While we expressed somewhat different views in the *Sweetland Case* upon those statutes, the majority of the court now having held that the survival act applies under the circumstances here, we feel constrained to follow the rule laid down by the majority of the court, and hence concur in the opinion written by Mr. Justice HOOKER, so that a rule may be established for the guidance of the circuit courts and parties in future cases.

MOORE, J. The troublesome question in this case is whether a recovery can be had under both of two acts, which, for convenience, may be called the "death act" and the "survival act." The question involved here was discussed in the case of *Sweetland v. Railway Co.*, 117 Mich. 329 (75 N. W. 1066, 43 L. R. A. 568). Justice MONTGOMERY was of the opinion a recovery could be had under both acts; Justice HOOKER was of the opinion recovery could be had under the survival act, and not under the death act; Justices LONG and GRANT were of the opinion recovery could be had only under the death act; while I was of the opinion there was no evidence to show the deceased endured pain and suffering after her injury, and therefore, under the record as made, there could be no recovery, and it was not necessary to pass upon the other question. The result of the discussion in that case is that

three of the judges held there could be a recovery under the death act, two of the judges held there could be a recovery under the survival act, one of the judges held there could be a recovery under both acts, and one of the judges expressed no opinion as to whether a recovery could be had under either or both of these acts; so that it cannot be said the question is concluded in this court.

No legal question has been brought to my attention recently in which there is more conflict in the decisions of the courts. The opinions are contradictory, and it would be difficult to reconcile them with each other. In 1889 a series of articles appeared in 28 Am. Law Reg. (N. S.) 385, 513, 577, wherein the writer undertakes to call attention to the decisions both in England and this country under the title of "Statutory Liability for Causing Death." In this discussion there is a review and analysis of nearly all the cases which had been decided up to the time the articles were written. A reference to this series of articles will show how conflicting have been the decisions. As a result of the discussion, the learned author reaches the following conclusion, which I think is fully justified by the authorities:

"With this review of the authorities, including all of importance which have come to our notice, bearing upon the question of construction which we proposed at the outset, let us return to a consideration of that question upon its merits. We have no hesitation in declaring a preference for the view which regards the right of action given by Lord Campbell's act, and those of our American statutes which do not differ widely from it in form, as a new right of action, and not a revival or continuation of a common-law right possessed by the deceased. When we consider (1) that the purpose of the action is to compensate certain persons for the indirect injury to them involved in causing the death of another; (2) that the right of action thus given is not conditional upon a right of action having vested in the deceased, but arises as well in cases of instantaneous death as others, the remedy being in fact particularly called for in cases of sudden death; and (3) that the damages given in the action entirely ex-

clude such as the deceased himself could have recovered, —we find it impossible to reach any other conclusion.

"It is frequently said that the scope of the original right of action which the deceased would have had is merely enlarged so as to embrace the injury resulting from the death (see Cooley, Torts, 264); but this attempted explanation of the different rule of damages applied in the action under the statute will not serve its purpose, since not only are new damages included in the new action, but the old damages are entirely excluded. The remedy is not enlarged to embrace the death, but is, under the statute, confined to the death. It is sometimes said that it is impossible to draw a line severing with accuracy the damages to the person injured from those to his relatives. See, for example, *Holton* v. *Daly*, (1882) 106 Ill. 131 (page 140 of opinion). But it is a sufficient answer to this objection that both the language of the statute and all the decisions construing it require such a line to be drawn.

"Then, again, it is said that, although the measure of damages is different from what it would be in an action by the injured person in his lifetime, the cause of action is in both cases the same; that is, the wrongful act, neglect, or default. The simple answer to this statement is that the two actions are brought for different consequences of the same act, and are certainly as distinct from each other as is the action brought by a husband or father for an injury to his wife or child from the personal action of the wife or child for the same injury.

"The view that the right of action given by the statute is merely a continuance of the common-law right of action was first broached, as we have seen, when the question of permitting two recoveries arose. In our view, the courts, in their anxiety to prevent what was deemed a most undesirable result, overshot the mark, and advanced a theory of the statute which they could not successfully defend, and which was, perhaps, not necessary to accomplish the desired end.  *   *   *

"As to the right to maintain two actions after the death of the injured person (supposing him not to have recovered damages in his lifetime), where there is, in addition to the special act, a general provision of law making rights of action for injury to the person survive, it seems that such right should be ordinarily recognized, in the absence of an express provision to the contrary. The opposite and

inconsistent courses adopted by different courts in the attempt to escape from this result seem to convict them all of being without warrant. If this is the correct view, it will sometimes happen that two actions will be maintainable after death, one representing the injured person's cause of action, the other the family's cause of action, when, at the same time, a recovery upon the former, before death, would have precluded any further recovery whatever; and it may be urged as an objection to the view, therefore, that it involves an inconsistency. There is seeming force in this objection, but the charge of inconsistency should be laid at the door of the legislature which enacts the statutes. From the fact that the special statute only provides for an action after death when none has been brought in the lifetime it cannot properly be inferred that there is to be only a single action after death when there has been none during the lifetime; because, if for no other reason, there is nothing to indicate under which statute such action shall be brought,—which right of action, which liability, is to have the preference. It should be said that the phraseology of the first section of the English act cannot be used with any propriety where the general law provides for the survival of causes of action for injury to the person, as it assumes that such causes of action do not survive; and, if so used, the circumstance of its origin should be taken into account in the attempt to construe the statute in competition with the survival act. The language in such case must be recognized as merely containing an erroneous assumption with reference to the law of the State where it is adopted, and should not be deemed to have been used with the intent either of cutting down the survival act, or of restricting the natural meaning and operation of the statute itself." 28 Am. Law Reg. (N. S.) 580–584.

After the case of *Sweetland* v. *Railway Co.* was before this court, the question involved here was before the court in *Brown* v. *Railway Co.*, 102 Wis. 137 (77 N. W. 748, 78 N. W. 771, 44 L. R. A. 579), where there is a very full and able discussion, in which, referring to the provisions of the statute, the following language appears:

"They refer to entirely distinct losses, recoverable in different rights,—the one in the right of the deceased for the loss occasioned to him; the other in the right of the

surviving relatives for the loss to them.   Both are dependent on the injury, but only one dependent on the death with surviving relatives to take under the statute.   The language of one provision is that 'actions for personal injuries shall survive;' and of the other, 'in case of the death of a person by the wrongful act of another,' under certain circumstances named, the wrong-doer 'shall be liable to an action for damages, notwithstanding the death of the person injured, if the death be caused in this State.'   The only condition of the right of action in the former case is the existence of the actionable claim for damages at the time of the death of the injured party.   The statute creates no new liability, but prevents the lapsing by death of an old one.   The only condition of liability under the other provision is the existence of an actionable claim in the right of the injured party at the time of his death and the existence of the beneficiaries mentioned in the statute.   The liability of the wrong-doer, while dependent on the condition named, is not on the actionable claim called for to satisfy such condition, but on a new right created by the statute,—the right of the surviving relatives to compensation for the loss which falls upon them.   The language of the statutes, when viewed in the light of the evident legislative purpose, is too plain to justify courts in interpolating into them language not there by necessary implication from the context, in order to make them accord with the ideas of judges as to the best legislative policy.   The judicial function, we need not say here, does not extend so far. It calls for a firm adherence to the law as written, if valid, without regard to individual opinions as to its being good or bad.   In this we do not intend to suggest that the law in question, as construed here, is a bad law.   On the contrary, there appears to be much wisdom in providing that a person who wrongfully causes a personal injury to another shall not profit by that other's death, so far as actual damages go, either to the deceased person, or to the wife, husband, or lineal descendants or ancestors of such person.

"True, as claimed by the learned counsel for respondent, and before indicated, several courts, for whose judgment we entertain high regard, in construing similar statutes, have decided that the right of action to surviving relatives is exclusive, and that the personal injury action that survives under section 4253, Rev. Stat. Wis., does not include those where death ensues from the injury.   A good example, among others cited in counsel's brief, is *Holton* v.

*Daly*, 106 Ill. 131.  That learned court reasons that there is
but one ground of liability,—the wrongful act,—and, as all
claims for damages grow out of the one wrong, it is un-
reasonable to say the legislature intended there shall be
two causes of action based upon it; that the more reason-
able view is that the act making causes of action for per-
sonal injuries survive should be considered as referring to
a special class of actions, not included in those named in
the general provision giving a right of action to surviving
relatives; that without that construction there would be a
repugnance between the two provisions.  The fallacy of
that reasoning is easily apparent.  True, in the circum-
stances named, there is but one wrongful act, but that is
not the sole ground of action in the right of the deceased
or the survivor.  It takes the wrongful act and the loss
to make the complete cause of action, and, as the loss to
the person upon whom the injury is inflicted must be
recovered by or in his right, and the loss to the surviving
relatives by or in their right, the causes of action are clearly
distinct.  It does not require, apparently, much clearness
of mental perception to discover that, if several persons
are made to suffer pecuniary loss by one wrongful act,
each may very properly have his independent cause of
action and remedy for the loss resulting to him; and that,
generally, in order to do complete justice, in the absence of
some provision for a recovery for the benefit of all and a
distribution of the proceeds, separate causes of action must
necessarily exist.

"The views of the Illinois court accord with the judg-
ment of the supreme court of Kansas.  *McCarthy* v.
*Railroad Co.*, 18 Kan. 46 (26 Am. Rep. 742); *City of
Eureka* v. *Merrifield*, 53 Kan. 794 (37 Pac. 113); *Martin*
v. *Railway Co.*, 58 Kan. 475 (49 Pac. 605).  It is signifi-
cant that the former treats the act for the survivorship
of the right to recover damages to the deceased for the
benefit of his estate as a special provision, and that for the
benefit of surviving relatives as a general act, and that,
giving them a literal interpretation, they are repugnant to
each other in part; while the latter reverses the situation,
treating the act of the claim for damages to the deceased
as general, and that for the benefit of surviving relatives
as special, the latter being intended to take away the right
of survivorship for the benefit of the estate, which would
otherwise be given by a literal reading of the former pro-
vision.  The fallacy of both processes of reasoning grows

out of a failure to observe the distinction between the wrong and the resulting loss; that, though there be but one wrongful act and one physical injury, there may be several persons that suffer distinct losses, some of which are actionable at common law and some actionable dependent on the statute. Justice Brewer, who was a member of the Kansas court at the time the first decision there was rendered, and concurred in it, referring to the subject when he was later called upon to consider the matter as a member of the Federal bench, in the case of *Hulbert* v. *City of Topeka*, reported in 34 Fed. 510, said, substantially, that he doubted the correctness of his former opinion, and followed it only in deference to the settled judicial policy of Kansas, the cause being one that arose there; that the bases of recovery under the two provisions of law under consideration, the one for the benefit of the estate of the decedent, and the other for the benefit of his surviving relatives, are entirely distinct, the former being based on survivorship of the claim of the deceased, taking no note of the pecuniary loss to relatives, and the other on survivorship of relatives mentioned in the statute, taking no note of damages to the decedent; that the latter proceed regardless of whether the death was instantaneous or followed after months of pain and suffering, being damages to relatives by death, to be measured by their pecuniary loss caused thereby, while the former is for loss that would otherwise be a permanent injury to the estate itself. For further illustrations of the distinction, the following in Mr. Justice Wilson's opinion in *Needham* v. *Railway Co.*, 38 Vt. 294, is quoted by Justice Brewer: 'The principles on which the intestate's cause of action rested at common law are the same, irrespective of the cause of his death.' It 'died with his person, but is revived by the statute in favor of his administrator.' It includes 'nothing more than his intestate's cause of action. The statute simply revives, but does not enlarge, the common-law right of the intestate.' The provision for surviving relatives 'introduced principles wholly unknown to the common law, namely, that the value of a man's life to his wife and next of kin constitutes a part of his estate.' 'Such damages to the widow and next of kin begin where the damage of the intestate ended, viz., with his death.'

"The weakness of the theory that the action for injuries to the person which survives includes only those not covered by the statute for the benefit of surviving relatives is

further illustrated by the fact that courts adhering to that view uniformly refer to *Read* v. *Railway Co.*, L. R. 3 Q. B. 555. The decision there is only to the effect that, if an injured person have satisfaction of his claim before death, the subsequent death from the injuries does not confer a right of action upon surviving relatives; that such right exists only where there is an injury to a person, and there is an existing claim for damages therefor at the time of his death. Justice Blackburn, who delivered the opinion, said, in substance, that the proper construction of the statute is that it gives a right of action to certain surviving relatives of a person when death was caused by the wrongful act of another, where he had not received satisfaction in his lifetime, and that to go further would be straining the language of the law. That seems plain. The language of our statute is that liability of the wrong-doer exists where the deceased could have recovered if death had not ensued. That clearly excludes the idea that, where the decedent receives satisfaction for his injuries, the conditions requisite to the right of surviving relatives may exist notwithstanding. There is nothing in *Read* v. *Railway Co.* in conflict with *Blake* v. *Railway Co.*, 10 Eng. Law & Eq. 443, where, in a very instructive opinion by Coleridge, J., it is said that Lord Campbell's act does not transfer to the surviving relatives mentioned the claim for damages previously possessed by the deceased, but gives to them an independent cause of action for damages peculiarly incident to their relation to the deceased. The two cases are often cited to opposite views, but are in fact, when correctly understood, in perfect harmony. The one holds that the right of the relatives named in the statutes is separate and distinct from that possessed by the deceased; the other, that the right of the relatives is contingent on the death of the injured person without having satisfied his claim for damages."

I can see no fault in the reasoning contained in these excerpts, and think it entirely in harmony with the suggestions contained in *Hyatt* v. *Adams*, 16 Mich. 180, and *Hurst* v. *Detroit City Railway*, 84 Mich. 539 (48 N. W. 44). The language of the two acts is not ambiguous. There is nothing, to my mind, in the language of the death act which indicates it was intended to repeal the survival act; or in the language of either act which pre-

cludes the representative of the estate of the deceased from recovering for the benefit of the estate under the survival act, and for the benefit of the persons entitled to the personal property of the deceased under the death act.

I agree with the Chief Justice that the judgment should be affirmed.