JONES *v.* McMILLAN.

1. MASTER AND SERVANT — NEGLIGENCE — CAUSE OF ACCIDENT — QUESTION FOR JURY.

In an action for the death of plaintiff's intestate, it was shown that one of the "bents" of a tramway, which he was assisting to build, gave way, letting down some heavy timbers, one end of which rested on another bent, on which was decedent; and that just at that time he fell from the bent, sustaining the injuries which caused his death. Defendants claimed that decedent's fall was not caused by the jarring of the bent, and there was evidence that it was due to his own negligence. *Held*, that it was error to instruct the jury that it was undisputed that the jarring of the bent caused the fall, and that they should accept undisputed facts.

2. ACTION FOR DEATH—EVIDENCE—MORTALITY TABLES.

In an action for wrongful death, the mortality tables were properly admitted in evidence to aid the jury in determining the expectancy of life of the deceased, and of those who suffered damage by his death.

3. SAME—DAMAGES—INSTRUCTIONS.

But it was error to instruct them generally that an element of damages would be the amount the widow would probably have received from decedent during her expectancy, as shown by the tables, and the amount he would probably have contributed to the support of each child until it should attain the age of 21 years, to be determined by a consideration of the amount of his previous contributions; since, under such instruction, the jury would naturally fail to consider the contingencies of death, marriage, and the impaired earning capacity of decedent.

4. SAME—COMPUTATIONS OF WITNESSES.

And the computation of a witness as to the present worth of the probable future contributions of decedent, which excluded the considerations last mentioned, should not have been permitted to go to the jury as controlling their decision.

5. SAME—PERSONAL INJURIES—SURVIVAL OF ACTION.

Where one fatally injured through another's fault survived for several days, a right of action existed in his favor, which survived to his personal representatives; but the statute giving a remedy for death by wrongful act has no application to such a case. Following *Dolson* v. *Railway Co.*, 128 Mich. 444.

6. SAME—AMENDMENT OF DECLARATION.

Whether a declaration counting on the death act, filed as commencement of suit, may be amended so as to set up a cause of action for negligent injuries, surviving to the personal representatives,—*quære.*

Error to Ontonagon; Haire, J. Submitted November 19, 1901. Decided December 10, 1901.

Case by Annie Jones, administratrix of the estate of Ole Jones, deceased, against Benjamin F. McMillan, Charles V. McMillan, and George H. Reynolds, copartners as B. F. McMillan & Brother, for negligently causing the death of plaintiff's intestate. From a judgment for plaintiff, defendants bring error. Reversed.

*Ball & Stone,* for appellants.

*A. E. Shuster* (*C. E. Miller*, of counsel), for appellee.

HOOKER, J. The defendants employed the plaintiff's

intestate to aid in the construction of a tramway to be used with and as a part of the defendants' sawmill; and defendant Reynolds is alleged to have had supervision of its erection, being at the place of work at intervals, when he gave general directions to the men engaged. The defendants had previously been engaged in the business of manufacturing lumber in the adjoining State of Wisconsin, and this sawmill and the material being used in the erection of the tramway had seen use there. They were engaged in removing it to Michigan, and the mill had been reconstructed, and at the time of the accident the tramway was being rebuilt from the old materials. The men engaged in the work were workmen in their employ, and apparently were common laborers. The plaintiff's intestate had worked about a sawmill for several years.

In the construction of this tramway, a long stringer extending across the northwest end of the mill was fastened to the mill by bolts. This furnished a support for one end of the timbers called "overlays," which supported the floor or deck of the tramway. To make the tramway wider than the mill, the stringer first mentioned was extended to the southwest 12 feet by a piece of timber 8 inches square, supported at the ends by posts. This timber the witnesses call a "cap," calling the stringer and its extension a "bent." The tramway consisted of three bents, the second of which was about 16 feet from the first, and parallel with it, and the other was placed at a similar distance from the second. The second and third were alike, and each consisted of five upright posts and four caps, each about 12 feet long. Eight by eight timbers were used for posts and caps, the latter being spliced in some instances. The bents were put together upon the ground, and raised by a team by means of a gin pole and pulley. Being raised, they were stayed both ways with 2x6 stuff, to keep them in place, and the top was stayed by plank extending from the mill to the third bent, the same being spiked to the caps. Overlays, as they were called, consisting of heavy timbers, were next to be placed at intervals

of six feet, extending from bent to bent. These were hoisted by the team and pole. The deceased went upon the first bent or stringer, while one Roehm went upon the second bent, and these two received the overlays as they were hoisted, and laid them down, an end of each overlay resting on the caps. Subsequently they were to be distributed by carrying or rolling them over, or carrying them to their places. Instead of taking them to their respective places at once, the men allowed them to accumulate upon the outside row of caps to the number of six or seven, so that, at the time of the accident, the ends of six or seven rested on the cap upon which the deceased stood, while there were twice as many upon the cap that broke, as that carried ends of overlays extending both ways. In rolling one stick over the others it was allowed to slip, and it fell upon the cap of the second bent, and broke it, and the bent and timbers upon it went down together. Roehm, who was on this bent, dropped to the ground unhurt; while Jones either fell or was thrown from the cap of bent No. 1, and was injured so severely that he died three days afterwards. This action was brought by his administratrix by filing declaration as the commencement of suit, counting upon the statute providing for recovery for causing the death of a person.

There are several assignments of error which we consider well taken. The court charged the jury as follows:

"It seems, under the facts that are undisputed, that the cap of a certain bent broke, which we will call 'bent No. 2.' The cap of that bent broke, and let down certain timbers that were piled thereon, and shook another bent, that we will call 'bent No. 1,' on which Mr. Jones, the intestate, was standing; and by reason of this falling of these timbers, caused by the breaking of the cap on bent No. 2, which jarred bent No. 1, so that Jones fell off and injured himself, by means of which he afterwards died."

It was claimed by the defendants that Jones' fall was not caused by the jarring of the bent. There was testimony that, at the time the cap broke, he sat astride of the other cap, and that the fall was due to his own negli-

gence. This raised a question for the jury, and the court should not have taken it from them. He not only said that this was an undisputed fact, but added, "Of course, the undisputed facts you will have to accept."

Error is assigned upon the admission of the mortality tables. We have no doubt of their admissibility as an aid to the jury in determining the expectancy of life upon the theory upon which the case was tried, for it was necessary to determine such expectancy, not only of the deceased, but of those who were found to have suffered damage by his death. In the absence of other evidence, the tables would be controlling. *Nelson* v. *Railway Co.*, 104 Mich. 587 (62 N. W. 993). But, as said in *Damm* v. *Damm*, 109 Mich. 622 (67 N. W. 985, 63 Am. St. Rep. 603), they are not necessarily conclusive. It was therefore error for the court to instruct the jury that:

"I charge you that, under the undisputed evidence in this case, the expectation of life of plaintiff's intestate was 33.21, and the expectation of life of Annie Jones, the widow of said intestate, was 31.07 years; and I charge you, if you find a verdict for the plaintiff, that one element of the damages would be the amount that said Annie Jones would probably have received during said term of 31 years, and that, in determining that question, it is your duty to take into consideration the amount said plaintiff's intestate had contributed towards the support of said Annie Jones during the lifetime of said plaintiff's intestate.

"I further charge you that the undisputed evidence shows that, at the time of the death of plaintiff's intestate, he left surviving him one child less than five years, one child less than three years old, one child less than two years old, and one child was born within six months after the death of said plaintiff's intestate; and I charge you that one element of the damages which plaintiff in this case is entitled to recover, provided you find a verdict in favor of the plaintiff, is the amount which plaintiff's intestate would probably have contributed to the support of said children until they should have respectively attained to the age of 21 years; and in determining this question it is your duty to take into consideration the amount which plaintiff's intestate had contributed to the support of such children during his lifetime."

The jury would naturally award damages for the entire expectancy, as shown by the tables, for the widow, and up to the age of 21 for each child, without considering the possibilities of death, marriage, and earning capacity of deceased in either case.

In this connection we will advert to the testimony of the witness Shuster. He testified that, taking $9 a week as the rate, he figured upon the basis of the mortality tables that the damages would be $8,172.52. But $9 a week was the entire earnings. He testified to another computation, based on an allowance of $1.80 a week for the support of the deceased, which gave $7.20 to the others, and made the damages $5,990.40, and the present worth $4,278.85. He explained his method of obtaining the present value. It was upon this testimony that the quotation from the charge rested, and the computation is subject to the same criticism that has been made to the charge. Moreover, the court instructed the jury further to the effect:

"Now, in this case there has been some testimony introduced about finding the present worth of the damages, if you find any damages, that this plaintiff has suffered, or that this estate has suffered. Now, if you consider those figures correct, you have a right to rely upon them. In no case can the amount exceed the sum of $8,172.52. Of course, add to that $116. I say it cannot exceed that amount. It may be less. It will be for you to determine. Whatever you find the present worth of the damages suffered by reason of the death of the plaintiff's intestate is, add to that $116. The lowest amount figured by the witness Shuster on the stand is $5,425.50. Now, it is for you to say how much the plaintiff is entitled to recover in this case, if you find she is entitled to recover at all."

The jury found a verdict for $4,362.96.

It was for the jury to determine the amount of damages to the individual upon the basis of his or her loss. Then it was necessary to determine the expectancy of life of all, and the ability of the deceased to earn, which involved the consideration of possible illness, and perhaps want of employment, and then it was necessary to esti-

mate the present value.  No instructions upon any of these subjects appear to have been given to the jury, and they may well have understood that their verdict must be within or between the amounts testified to by Shuster. For these errors the cause must be reversed.

There are many other questions involved in this case, but similar questions have been so frequently passed upon that their consideration would involve little more than making an application of the law to them.  The rules ought to be well understood, and as the case, if tried again, must be upon an entirely different theory, we do not discuss them.  From the undisputed facts it is apparent that the rule laid down in the recent case of *Dolson* v. *Railway Co.*, 128 Mich. 444 (87 N. W. 629), was not followed.  A right of action existed in favor of the deceased, which survived, if any right of action existed; and the statute does not give a right of action for causing this death.  The case was therefore tried upon a wrong theory. The mistake appears to have been mutual, and it was, perhaps, a natural one, in view of the uncertainty then existing upon the rule that would ultimately be laid down by this court in such cases.  The court refused to direct a verdict for the defendant, which should have been done; but not only was the attention of the trial court not directed to the reason stated as a ground for such request, but the same was not even mentioned in the original brief of the appellant, appearing for the first time in a supplemental brief, after the opinion in the *Case of Dolson* was filed.  It is contended that the point should not be considered under such circumstances; but, as we have said, the case must be reversed on other grounds.  Whether or not the declaration can be amended, and whether or not such amendment would constitute a new cause of action, not permissible under the statute permitting amendments, especially as the declaration, and not an original writ, was used for the commencement of suit, are questions not discussed, and we therefore refrain from expressing an

opinion upon them.   See *Hurst* v. *Detroit City Railway*, 84 Mich. 539 (48 N. W. 44).

The judgment is reversed, and the cause is remanded for further proceedings.

MONTGOMERY, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.