STORRIE *v.* GRAND TRUNK ELEVATOR CO.

1. INJURY TO EMPLOYE—CONTRIBUTORY NEGLIGENCE—EVIDENCE— OPINIONS.

Where defendant claimed that its employé was negligent in going under a certain gate in a grain elevator building, and plaintiff claimed that the successful operation of the elevator required his presence there, the opinions of experienced workmen as to whether, in the ordinary course of his duties, it was necessary and proper for him to go there, were competent.

2. SAME—MACHINERY—DUTY TO REPAIR—EVIDENCE—HARMLESS ERROR.

In an action for the negligent killing of an employé by the falling of a gate, an answer of a witness that it was the duty of the superintendent to keep the gate in repair was not prejudicial error, as the important question was whether it was the duty of the intestate; if not, it was the duty of the master, and might be performed by the superintendent or any other person.

3. EVIDENCE—FORMER TRIAL—MISCONDUCT OF JURY.

Where a plug, a part of a gate, was shown to have been in its place when brought into court on a former trial, and plaintiff's counsel conceded it was taken out about the time it was sent to the jury-room, and it was identified on the last trial, it was not error to refuse to allow defendant to show that it was removed by the former jury.

134    297
136    111

4. EVIDENCE — AGENTS — MATTERS WITHIN KNOWLEDGE OF DECE-
DENT.

  . Testimony by the superintendent of a factory, relating to the
circumstances of the accidental death of an employé, of
which he was a passive spectator, should not be excluded as
equally within the knowledge of the deceased.

5. SAME.

   Testimony by the superintendent of a factory, relating to
warnings and directions given by him to an employé who
was killed, should be excluded as being equally within the
knowledge of the deceased.

6. NEGLIGENCE—CAUSING DEATH—RIGHT OF ACTION.

   An action for causing the death of a person by wrongful act,
neglect, or default cannot be maintained under the statute
(3 Comp. Laws, §§ 10427, 10428) where the death was not
instantaneous.

Error to St. Clair; Whipple, J. Submitted May 14,
1903. (Docket No. 67.) Decided September 15, 1903.

Case by Flora Storrie, administratrix of the estate of
James Storrie, deceased, against the Grand Trunk Ele-
vator Company, for the alleged negligent killing of plain-
tiff's intestate. From a judgment for plaintiff, defendant
brings error. Reversed.

*Herman W. Stevens* and *John C. Graham*, for ap-
pellant.

*George G. Moore* and *John L. Black*, for appellee.

HOOKER, C. J. The plaintiff's husband was severely
injured at the defendant's elevator, and died two months
later. This action is brought by his widow as administra-
trix.

At the elevator the defendant had an apparatus for
unloading grain from vessels. The building was three
feet from the edge of the dock. The grain was raised
through a leg, which extended from the upper stories of
the elevator into the hold of the vessel. Grain was brought
to the end of the leg in the hold by the use of large shovels

drawn by ropes, which were wound upon drums in the front part of the lower story of the elevator.  There were two shovels, the lines to each winding upon such a drum, which thus drew the shovel full of grain.  By reverse action the shovel was drawn back empty, the lines being unwound as they were wound upon other drums.  These lines extended from the elevator to the boats through a high and wide door in the first story of the elevator, upon each side of which large door was an ordinary door for ingress and egress to and from the elevator.  The space in front of the drums was barred by large levers, one on each side of the large door, which set the respective drums in motion through the contact of a friction wheel.  In the large door was a gate, made of heavy timbers, with rollers, over which rollers the lines passed, and by raising or lowering the gate, according to the height of the boat, the lines were properly adjusted to work without friction.  It is obvious that the strain on the rollers, and consequently upon the gate, was considerable.  The gate was suspended to a pulley, used to raise or lower it, by an eyebolt passed through the top timber or head of the gate, and on the occasion of the accident this eyebolt pulled out, letting the gate fall, and Storrie, who stood under it, was crushed.

The defendant claims that a verdict should have been directed against the plaintiff upon the ground of Storrie's contributory negligence in standing under the gate, which it claims was an unsafe place, and that it was unnecessary for him to go there.  It also asserts that Storrie fixed the gate and adjusted the ropes, and had an opportunity to see, when it was suspended, that the eyebolt was loose, and had pulled up an inch or two.  The gate was made of heavy timbers, two horizontal, constituting the top and bottom, connected with three perpendicular cross-pieces, mortised into the top and bottom.  The middle cross-piece was immediately under the eyebolt, and a slot was cut into it to accommodate the nut on the end of the bolt, and a washer, which should have been, but was not, used above the nut.  The slot was filled by a block, which,

when in place, would conceal the nut and washer. It is manifest that, if the nut was pulled up into the wood, the eyebolt would become loose, and that, if it became loose, it must be due to one of two causes, viz., such pulling of the nut into the wood, or the loosening of the bolt from the turning of the nut, which one familiar with the construction would ordinarily know. The accompanying diagrams show the construction; also a break in the upper horizontal bar of the gate. This crack had been discovered, and the bar had been strengthened by spiking some 2x12 pieces upon the sides. This concealed the crack.

It was claimed by the defendant that James Storrie had worked for many years as foreman of the steam shovel gang at this elevator, and in making necessary repairs, and doing other work about the elevator; that he was well acquainted with the machinery, the operation of which it was his duty to oversee, including the oiling of the machinery, and its adjustment to the boat to be unloaded. The defendant insists that Storrie was negligent in going under the gate, and that he had no occasion to go in front of the drums or gate, between the levers, which he would have to stoop and go under the levers to do; while the plaintiff claims that it was necessary for him to go there, to see that the lines did not become tangled or "fouled." The defendant claims that Storrie built this gate, and put in the eyebolt and nut himself, about a year before the accident, neglecting to put on a washer, but for which the nut would not have pulled up into the wood. He then put in the plug and painted the gate. It is said that he was the only person who knew of the absence of a washer, that he knew all about the construction and strain upon the gate, and, being competent to inspect it, and being at work when it was repaired, and knowing that he was to act as foreman, he made no complaint about its being insecure, and on the day of the accident—being after the repairs were made—he oiled the gearing, and put the machinery in readiness for work, and should have discovered the defect. Just before the accident he took an oil can, stooped down

TOP.

TOP.

Section.

and went under the lever, and entered between the gate and the drums, and, as he stepped under the gate, the eyebolt pulled out, with the nut upon it, and the heavy gate fell upon him.   He lived two months, retaining consciousness.   The defendant brings error upon a judgment for plaintiff of $8,000.

"The negligence charged was the failure of defendant to inspect the gate, and to see that the head of the gate through which the eyebolt passed was not decayed, or rotted, broken, or splintered."   The plaintiff claims that the gate was taken down for repairs about six weeks before the accident by one Bennett and four carpenters.   It was found that the head piece was cracked, and that the ring-bolt had worked up two inches into the wood.   The only repair made was the spiking on of the two planks to strengthen the head piece.   That Storrie had nothing to do except in the capacity of foreman of the shovel gang,— nothing to do in the line of his work about the elevator except to properly superintend the unloading of cargoes.

The questions discussed in the briefs of counsel relate:

(1) To the admission of opinion evidence as to the propriety of Storrie's being in front of the drums; *i. e.*, whether it was necessary, and in the line of his duty.

(2) To the admission of the testimony of witnesses that it was the duty of one Burke to keep the gate in repair.

(3) To the exclusion of evidence of the loss of the plug, upon the former trial, through its being sent to the jury-room.

(4) To the exclusion of the testimony of Burke, the superintendent of the elevator, on subjects equally within the knowledge of Storrie.

(5) To the rule of damages followed in the case.

1. *Opinion Evidence.*   It was claimed that Storrie was guilty of contributory negligence in going under the gate. Defendant insists that this is a self-evident proposition, and that it necessarily follows from the undisputed facts. The plaintiff urges quite as strenuously that the successful operation of the machine required his presence there, to see that the ropes "did not foul," and evidence was given *pro*

and *con* upon that point. Three witnesses were allowed to give their opinions as to the necessity of his going in front of the drums and under the gate, the court holding that it was proper to show the duties of a foreman by competent witnesses. They were also allowed to show the opinions that under the gate was the safest place in front of the drums. This question arose by reason of defendant's claim that it was negligence *per se* for the foreman to go there. These witnesses did not assume to say whether it was necessary for Storrie to be there on this occasion, but only that, in the ordinary course of his duties, it was a necessary and proper thing for him to do so. We are of the opinion that it was competent for these witnesses to express their opinions as to the necessity or expediency of entering in front of the drums or under the gate, it appearing that they were acquainted with the premises and work, having first stated the conditions and circumstances showing their knowledge, and upon which the opinion was based. It follows that the question of contributory negligence was for the jury.

2. *Duty to Keep the Gate in Repair.* Defendant complains that one McFarland was allowed to testify that "he would think it was Burke's duty to keep the gate in repair." Upon defendant's theory this was immaterial, because Storrie was charged with inspecting and repairing; but this was not conceded, and plaintiff's claim is that Storrie was called upon to operate the machinery, and not to inspect or repair it. There was no exception to this question, and, if there had been, it was not especially injurious, for the witness testified that it was no part of the foreman's duty, and, if not, it was the master's, and hence whether it was imposed upon Burke, the superintendent, or some one else would make no difference. The important question was whether it was Storrie's duty or not, and the witness said it was not.

3. *Misconduct of Former Jury.* Defendant's counsel urge that they should have been allowed to show that the former jury had removed the plug from the gate. It was

shown that the plug was in its place when the gate was brought into court on the former trial, and counsel for plaintiff conceded that it was taken out about the time the gate was taken into the jury-room. The plug was identified upon the last trial, and we see no reason for reversing the case upon this ground.

4. *Burke's Testimony.* Defendant's superintendent, Burke, was asked, "Who had the looking after the fixing of the gate?" It also sought to prove by him that Storrie assisted in the last repairs by his direction; also that he had cautioned Storrie about standing under the gate. Defendant also sought to show the circumstances of Storrie's entrance under the gate. All of this testimony was excluded or stricken out upon plaintiff's claim that the circumstances were equally within the knowledge of the deceased. In the case of *Brennan* v. *Railroad Co.*, 93 Mich. 156 (53 N. W. 358), it was held that the effect of this statute should be restricted to the exclusion of the testimony of such agents only as are authorized to act for the company in the matter with reference to which testimony is given. Applying this rule, it is plain that the superintendent was authorized to act for the company in warning Storrie not to go under the gate. The same is true of his direction to Storrie to take down and repair the gate; but his testimony relating to the circumstances of an accident, of which he was merely a passive spectator, and in which no act of his own as agent was involved, would not be excluded. Such testimony was admissible, and the ruling that he could testify to no fact equally within the knowledge of the deceased was too broad.

5. *The Rule of Damages.* The various decisions of this court following the case of *Dolson* v. *Railway Co.*, 128 Mich. 444 (87 N. W. 629), and especially *Jones* v. *McMillan*, 129 Mich. 86 (88 N. W. 206), show that the only right of action that the administratrix had was under the act providing for the survival of actions, whereas this action was prosecuted and recovery had under the death act. It was tried, and the motion for new trial was

made, before the *Case of Dolson* was decided. Hence this question was not presented to the trial court, and ordinarily the question would not be considered here for that reason. As the case must be reversed for the ruling in relation to Burke's testimony, it is unnecessary to discuss the question of remedy or damages further.

The other Justices concurred.